J-S18014-18

2018 PA Super 170

| RICHARD C. HVIZDAK | IN THE SUPERIOR COURT |
|---|---|
| Appellant | OF PENNSYLVANIA |
| v. | |
| DOUGLAS G. LINN, ESQUIRE, JENNIFER R. LINN, ESQUIRE, LINN LAW GROUP AND MICHELLE M. HVIZDAK | |
| Appellees | No. 1012 WDA 2017 |

Appeal from the Order entered June 9, 2017
In the Court of Common Pleas of Butler County
Civil Division at No: AD 15-11055

BEFORE:  STABILE, J., MUSMANNO, J., and FORD ELLIOTT, P.J.E.

OPINION BY STABILE, J.:                          **FILED  JUNE 18, 2018**

Appellant, Richard C. Hvizdak ("Husband"), appeals *pro se* from an order sustaining the preliminary objections of Appellees, Douglas G. Linn, Esquire, Jennifer R. Linn, Esquire, Linn Law Group (collectively "Attorneys") and Michelle M. Hvizdak ("Wife") to Husband's third amended complaint and dismissing his civil action with prejudice.

This action arises from Husband's and Wife's bitter divorce proceedings in the Court of Common Pleas of Butler County from 2007 to 2013.  Attorneys represented Wife during the proceedings.  Husband asserts, *inter alia*, that Wife's and Attorneys' conduct during the divorce case render them liable to Husband for violating the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), as well as for abuse of

1

process and wrongful use of civil proceedings. The trial court held that Husband failed to state valid causes of action. We affirm.

### Divorce Proceedings[1]

Husband and Wife married in 1994 and had two children during the marriage. In 2007, they divorced, and trial court entered a temporary order of child support requiring Husband to pay $7,500 per month to Wife for the child support. The court also granted Wife exclusive possession of the marital residence.

In September 2007, Husband presented a petition for special relief claiming that a pre-marital agreement prohibited Wife from removing any of his personal property from the marital residence. On September 26, 2007, the trial court enjoined Husband and Wife from dissipating or removing the other's assets pending equitable distribution proceedings. In July 2008,

_____

[1] We take judicial notice of our decisions in two appeals during the divorce proceedings at Nos. 2057 WDA 2007 and 37 WDA 2012.

Ordinarily, when reviewing an order sustaining a demurrer to a complaint, we cannot take judicial notice of records from other cases. *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006). However, there are exceptions to this rule. First, we can take judicial notice of other proceedings involving the same parties. *Estate of Schulz*, 139 A.2d 560, 563 (1958). The two prior decisions involve the same parties and therefore are subject to judicial notice. Second, "[i]t is appropriate for a court to take notice of a fact . . . which is incorporated into the complaint by reference to a prior court action." *Styers*, 900 A.2d at 899. Husband alleges in his third amended complaint that Appellees committed a series of torts during the divorce proceedings between 2007 to 2013. Since virtually every paragraph in Husband's third amended complaint concerns the divorce litigation, he has effectively incorporated the entire divorce proceeding, and our decisions therein, into his third amended complaint.

- 2 -

Husband filed a petition for civil contempt against Wife for removing his items from the residence in violation of the September 26, 2007 order. On August 26, 2008, the court ordered Wife to return all items that did not belong to her or the children. On November 13, 2008, the court held that Wife had substantially complied with the August 26, 2008 order and continued the contempt petition to a later date.

On February 13, 2009, Husband filed a contempt petition against Attorneys alleging that Wife had violated the September 26, 2007 order at their direction. On February 27, 2009, the trial court denied Husband's petition, observing that the contempt matter was moot because Wife had complied with the August 26, 2008 order directing return of Husband's property. Husband appealed to this Court at No. 565 WDA 2009, which affirmed the order denying Husband's contempt petition against Attorneys.

The divorce proceedings reached their climax in late 2011 and early 2012 in a dispute over a global settlement agreement. We described these events in Wife's appeal at No. 37 WDA 2012:

> On August 22, 2011, the parties reached a global settlement agreement (the "Agreement"). Pursuant to the Agreement, [Husband] would pay [Wife] $2.5 million. Also pursuant to the Agreement, [Husband] was to contribute $3.5 million to be used to fund a trust ("the Trust") for the parties' children ("the Children") in discharge of [Husband]'s child support obligations. Finally, the Agreement required [Husband] to pay $350,000.00 in counsel fees to [Wife]'s attorneys.
>
> The parties retained counsel to draft documents governing the Trust, and the drafting of the Trust documents took place between August 22 and a scheduled September 28, 2011 bankruptcy

hearing. The drafting process was contentious, and in the hours immediately preceding the September 28, 2011 bankruptcy hearing [Wife] requested removal of language in the Trust stipulating that the Trust funds were to be spent for the benefit of the Children. [Wife] believed that she would be able to spend trust funds for her own support as well as for the Children. [Wife] alleges that she signed the Agreement and the Trust documents believing that the requested revision had been made. A federal bankruptcy judge ratified the signed Agreement and Trust documents on September 28, 2011 and dismissed the bankruptcy proceeding.

[Wife] argues that the Trust documents are not binding because the parties did not reach a meeting of the minds as to [Wife]'s ability to use the Trust funds for herself as well as for the Children. [Husband] argues that the purpose of the Trust was to ensure that sufficient funds were available to satisfy his obligation to support the Children. [Husband] agrees that [Wife], as caretaker, will benefit directly or indirectly from using the Trust money for items such as housing and food, but [Husband] argues that the parties never intended [Wife] to have unfettered discretion to use the Trust money for any purpose.

After the ratification of the Agreement in bankruptcy court, [Husband] provided the agreed upon funds. [Wife] has declined to use the money to fund the Trust, pending the outcome of the parties' current dispute. [Husband] therefore filed a petition for special relief on October 25, 2011, asking the trial court to direct [Wife] to fund the Trust pursuant to the Agreement or to replace [Wife] as trustee. The trial court granted [Husband]'s petition in relevant part on December 8, 2011, and entered an order directing the parties to execute the Trust documents. [Wife] filed a motion to reconsider on December 28, 2011. After conducting a hearing on [Wife]'s reconsideration motion, the trial court denied relief in the order presently on appeal.

***Hvizdak v. Hvizdak***, 2013 WL 11279596, at *1 (Pa. Super., Feb, 22, 2013)

(appeal of Wife).

On January 6, 2012, Wife appealed to this Court. On February 22, 2013,

we affirmed the trial court's decision, holding that the Trust agreements were

- 4 -

solely for the children's benefit and stating, "Nothing in the record evinces the parties' intent to draft Trust documents clothing Mother with unfettered, unreviewable discretion to dissipate Trust assets without regard for the [c]hildren's benefit." *Id.* at *4. Wife did not file a petition for allowance of appeal to the Supreme Court.

### The Present Case

On May 19, 2014, Husband filed a civil action against Wife and Attorneys in the Court of Common Pleas of Allegheny County alleging that their conduct in the Butler County case rendered them liable for racketeering and common law torts. On May 27, 2014, Husband filed an amended complaint in the Allegheny County action.

According to Husband, in violation of court orders, Attorneys and Wife conspired to steal valuable personal property from the former marital residence in a burst of "pathological glee." First Amended Complaint at ¶¶ 27-28. Husband also accused Wife of "allow[ing] un-housebroken pets to deface, urinate or defecate over sofas, chairs, carpets, and torn down draperies, all of this fomenting an ambience of fetid squalor inside the mansion." *Id.* at ¶ 29.

According to Husband, the judge presiding over the divorce proceedings was "vulnerable" to Attorneys' "influences" and grew a "malignant obsession with [Husband], developing [into] an immutable *idee fixe*." *Id.* at ¶¶ 48-49. Attorneys "puppeteer[ed]" the judge into seizing Husband's passport, thus

preventing Husband from traveling to England on business ventures. *Id.* at

¶ 79. In addition, Appellant claimed:

> [Attorneys] concocted a sensational whispering campaign to circulate the stupendous lie that [Husband] enlisted members of the "Pagans" motorcycle gang to assassinate Butler County President Judge Thomas Doerr, Judge Kelly Streib and [Attorneys]. The Butler County forum became poisoned for [Husband] and [his] efforts to have law enforcement or the judiciary investigate the matter only engendered new enmities and rekindled suspicions.

*Id.* at ¶ 80.

Wife and Attorneys filed preliminary objections objecting to venue and asserting that Husband failed to state valid causes of action. On August 13, 2015, the Allegheny County court sustained the preliminary objection to venue and ordered Husband's action transferred to Butler County. Husband did not appeal this decision.

On December 21, 2015, Butler County President Judge Doerr assigned the case to the Honorable S. Michael Yeager. Husband wrote to Judge Doerr requesting that he "rescind" his case assignment order and disqualify the entire Butler County bench from hearing the case. On January 15, 2016, Judge Yeager recused himself. On January 25, 2016, the case was reassigned to Judge Marilyn J. Horan. On January 26, 2016, Husband filed a motion for recusal of Judge Doerr and the entire Butler County bench. On February 2, 2016, the motion was denied on the grounds that (1) the request with respect to Judge Doerr was untimely and thus moot, and (2) the individual judge assigned to the case alone could determine her own recusal.

On February 16, 2016, Husband filed another motion for recusal of the entire Butler County bench, including Judge Horan. Husband asserted that (1) false rumors had circulated during his divorce case that he had hired motorcycle gang members to assassinate Attorneys and local judges; (2) Husband requested the appointment of a grand jury to investigate the matter; (3) due to his request for a grand jury, President Judge Doerr recused himself; and (4) President Judge Doerr then denounced Husband in the media and threatened to sue him. Husband alleged that as a result of President Judge Doerr's animus against him, an appearance of impropriety would arise if any other member of the Butler County bench, including Judge Horan, presided over this case.

On March 2, 2016, Husband filed a motion for extraordinary relief in our Supreme Court seeking recusal and disqualification of the Butler County bench. On March 3, 2016, Judge Horan heard oral argument on Husband's motion. On March 4, 2016, Judge Horan stayed her decision pending the disposition of Husband's motion in the Supreme Court. On June 10, 2016, the Supreme Court denied Husband's motion.

On August 3, 2016, Judge Horan denied Husband's motion for recusal, stating:

> Following careful review of the record, [Husband's] Motion for Recusal and disqualification of this judge, and argument by [Husband] and Defendants from March 3, 2016, this judge concludes that there is no legitimate basis to grant [Husband's] Motion. This judge has no prior involvement with [Husband] or

with any matters involving him within this Court. There is nothing to preclude this judge from presiding over the above case.

Order, 8/1/16, at 2.

Judge Horan scheduled briefing and argument on the remaining preliminary objections to Husband's first amended complaint. On November 3, 2016, Judge Horan entered an order sustaining the preliminary objections to the amended complaint for legal and factual insufficiency but permitted Husband sixty days to file a second amended complaint to cure the defects.

On January 3, 2017, Husband filed a second amended complaint. Wife and Attorneys filed preliminary objections to the second amended complaint's legal and factual sufficiency. Husband responded by filing a third amended complaint on March 1, 2017 which purported to set forth claims of RICO Act violations, conspiracy, fraud, abuse of process, and wrongful use of civil proceedings arising out of the aforementioned divorce litigation.

The third amended complaint was similar in content to the first amended complaint discussed above. Husband alleged that Appellees were liable under RICO for the following pattern of acts:

> [Appellees] generated a plethora of predicate acts within the 2007-2013 period, but most notably: a) the conjuring of a fictitious protection from abuse order, 2007; b) the seizure of my personal and Trust property from the mansion, 2008; c) the despoilment of the house and grounds themselves; d) the *ex parte* seizure of my passport caused by baseless claims that I was disposing of assets to flee to Vietnam(!); e) the threatened imprisonment to coerce my signature upon tax return checks, f) other recurring motions for contempt over discovery demands that were oppressively burdensome to meet, 2007-2010; g) fraudulently procuring a court order freezing my assets and

forcing my businesses to shut down, 2010; h) unreasonably and deceitfully challenging a settlement in Common Pleas Court after accepting the settlement proceeds, 2012; i) unreasonably and deceitfully pursuing the matter into Superior Court after being reject[ed] in trial court, 2013.

Third Amended Complaint at ¶ 46. On March 20, 2017, Wife and Attorneys filed preliminary objections to the third amended complaint's legal and factual insufficiency.

On June 9, 2017, Judge Horan entered a memorandum and order dismissing the third amended complaint with prejudice for failing to state a cause of action. Husband timely appealed. Both Husband and Judge Horan complied with Pa.R.A.P. 1925.

## Discussion

Husband raises the following issues in this appeal, which we re-order for the sake of convenience:

1. Was it an abuse of discretion for the Judges of Allegheny and Butler Counties to declare [Husband's] choice of forum [an] improper venue, when the brunt of economic injury was borne to business interests located within Allegheny County, where [Husband] resides and where the counsel for [Appellees] both live and work?

2. Did extreme circumstances in this case, including false claims that [Husband] once plotted with motorcycle gang members to assassinate Butler Judges and lawyers (which provoked police inquiries and inspired a recusal), and public expressions of animosity over [Husband's] motion for a grand jury investigation into [sic] justify grant of [Husband's] motion to disqualify the Butler County judiciary?

3. Was the third amended complaint, which identified at least eight arguable predicate acts of racketeering, along with conspiracy, fraud, and abuse of process claims against

- 9 -

[Appellees], frequently using mail fraud, within a 2007 through 2013 period, constitute a cognizable claim for a racketeer[ing] pattern, or failing that, of a conspired, fraudulent scheme ?

4. Does a two year statute of limitation bar [] Husband's claims, even though [Appellees] were pressing a Superior Court appeal against [Husband] all throughout 2012, using mail fraud to continue a baseless, fraudulent matter?

5. Does the four year statute of limitations as announced in **Agency Holding Corp. v. Malley-Duff & Associates**, 483 U.S. 143 (1987) for racketeer[ing] claims, as well as the 18 U.S.C. 1961(5) "pattern of racketeering activity, at least two predicate acts within a ten year period," satisfy any concerns about untimely filing here?

Husband's Brief at 4.

Husband first argues that the Allegheny County court erred by sustaining Wife's and Attorneys' preliminary objection to venue and transferring Husband's action to Butler County. Pursuant to Pa.R.A.P. 311(g)(1)(ii), Husband forfeited the opportunity to raise this argument by failing to appeal within thirty days after entry of the order transferring venue.

Pa.R.A.P. 311(c) provides that "[a]n appeal may be taken as of right from an order in a civil action . . . changing venue . . . ." The appeal must be filed within thirty days after entry of the order changing venue. Pa.R.A.P. 902. At the time of the Allegheny County court's order, Pa.R.A.P. 311(g)(1)(ii) provided, "Where an interlocutory order is immediately appealable under this rule, failure to appeal . . . shall constitute a waiver of all objections . . . to venue . . . and the question of venue shall not be considered on any

subsequent appellate review of the matter."[2]  Here, the Allegheny County court entered its order transferring venue on August 13, 2015.  This order was immediately appealable under Rule 311(c), but Husband failed to appeal to this Court within the next thirty days.  Thus, under Rule 311(g)(1)(ii), he cannot object to the transfer of venue to Butler County in this appeal.

In his next argument, Husband contends that Judge Horan abused her discretion by denying Husband's motion to recuse herself from this case. Husband admits that he has no specific concern about Judge Horan; he simply believes that she would rule against him so as not to offend President Judge Doerr.  Appellant's Brief at 18.  In effect, Appellant argues that no judge on the Butler County bench can preside impartially over this case due to the desire to remain in President Judge Doerr's good graces.  We conclude that Judge Horan properly denied Appellant's motion to recuse.

"There is a presumption that judges of this Commonwealth are honorable, fair and competent[.]"  *In re Lokuta*, 11 A.3d 427, 453 (Pa. 2011).  Thus, a party seeking recusal "bears the burden of producing evidence to establish bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially."  *Commonwealth v. Watkins*, 108 A.3d 692, 734 (Pa. 2014).  A trial judge facing a recusal request must

---

[2] Although our Supreme Court revised the text of Rule 311(g)(1)(ii) on December 14, 2015, the meaning of the rule remains the same, *i.e.*, a party waives his objection to an order transferring venue unless he files an appeal within thirty days after entry of the order.

consider (1) whether she can "assess the case in an impartial manner, free of personal bias or interest in the outcome," and (2) whether presiding over the case would "create an appearance of impropriety and/or would tend to undermine public confidence in the judiciary." **Commonwealth v. Kearney**, 92 A.3d 51, 62 (Pa. Super. 2014). Thus, a judge shall recuse herself from a "proceeding in which the judge's impartiality might reasonably be questioned." Pa. Code of Judicial Conduct Rule 2.11. "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." **Kearney**, 92 A.3d at 62.

As noted above, Husband effectively seeks not only Judge Horan's recusal but also the recusal of every judge on the Butler County bench. Occasionally, but rarely, it is necessary for all jurists in a particular county to recuse themselves from a case. **See**, **e.g.**, **Commonwealth ex rel. Armor v. Armor**, 398 A.2d 173, 174 (Pa. Super. 1978) (recusal of entire Montgomery County trial court bench required where spouse of one judge had financial interest in child support case pending in Montgomery County). In most cases, this step is unnecessary. **See**, **e.g.**, **Commonwealth v. Melvin**, 103 A.3d 1, 22-23 (Pa. Super. 2014) (defendant, a former Superior Court judge and Supreme Court justice, was not entitled to recusal of all members of county bench in her criminal trial, even though defendant had formerly been a member of that county bench, and her former law clerk was the wife of a

member of county bench; defendant had no current relationship as colleague with any bench members, and neither her former law clerk nor her husband had any financial interest in outcome of case).

In the present case, Husband failed to demonstrate any reason for Judge Horan to recuse herself. Unlike **Armor**, there is no evidence that another judge on the Butler County bench has any financial interest in this case. Moreover, assuming that President Judge Doerr has any conflict with Husband, no reason exists to infer that this conflict affects Judge Horan in any way. Indeed, Judge Horan stated in her order denying recusal that she has no prior involvement with Husband or with any cases involving Husband. Husband's argument that Judge Horan would rule against him in order to please President Judge Doerr is sheer conjecture. There is no evidence to overcome the presumption that Judge Horan was anything other than "honorable, fair and competent" in this case. **Lokuta**, 11 A.3d at 453.

In his third argument, Husband contends that the trial court erred by determining that the third amended complaint failed to state a valid cause of action for RICO violations and other common law torts. "In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred." **Clausi v. Stuck**, 74 A.3d 242, 246 (Pa. Super. 2013). The purpose of this inquiry is to "determine the legal sufficiency of the

- 13 -

complaint and whether the pleading would permit recovery if ultimately proven." *Id.* The appellate court "will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion." *Id.* We address each cause of action alleged by Husband below.

**RICO claim.** Although RICO is a federal act, Pennsylvania courts and federal courts exercise concurrent jurisdiction over civil RICO actions. *Drohan v. Sorbus, Inc.*, 584 A.2d 964, 968 (Pa. Super. 1990). Pronouncements of the United States Supreme Court concerning RICO are binding on us, but the decisions of lower federal courts are not. *Commonwealth v. Walker*, 139 A.3d 225, 230–31 (Pa. Super. 2016). Nevertheless, we may rely on decisions of lower federal courts for persuasive authority. *EMC Mortgage, LLC v. Biddle*, 114 A.3d 1057, 1064 n.6 (Pa. Super. 2015).

Husband claims that the third amended complaint states a valid RICO action under 18 U.S.C. § 1962(c), which requires Husband to plead that Wife and Attorneys conducted an "enterprise" through a "pattern" of "racketeering activity."[3] *Id.*; *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 483 (3d Cir. 2015).

---

[3] An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(5). We need not examine whether Husband has satisfied the "enterprise" element because

We hold that Husband has failed to allege that Appellees engaged in any "racketeering activity" or in any "pattern" of racketeering activity.

The definition of "Racketeering activities" identifies a lengthy list of criminal acts (commonly referred to as "predicate acts"), which include, in relevant part,

> any act or threat, involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical, which is chargeable under state law and punishable by imprisonment for more than one year; any act which is indictable under any of the following provisions of title 18, United States Code . . . section 1341 (relating to mail fraud), . . . [and] section 1951 (relating to interference with commerce, robbery, or extortion).

18 U.S.C. § 1961(1).

First, Husband contends Appellees violated 18 U.S.C. § 1951 (also known as the Hobbs Act) and committed extortion under Pennsylvania law by "threaten[ing]" to "imprison[] [Husband] to coerce [his] signature upon tax return checks." The trial court correctly rejected this argument.

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by **wrongful use of actual or threatened force, violence, or fear**." 18 U.S.C. § 1951 (emphasis added). Since Appellees' threats allegedly took place during divorce proceedings, it appears that Husband alleges that Appellees threatened to ask the judge in the divorce

_____

we dispose of his RICO claim through analysis of the "racketeering activity" and "pattern" elements.

- 15 -

case to imprison Husband unless he signed tax return checks. This did not involve any threat of force or violence. Moreover, threats of litigation do not constitute inducement of "fear" under the Hobbs Act. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (joining "multitude of other courts in holding that meritless litigation is not extortion under [the Hobbs Act]"); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract ... does not constitute extortion"); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (even bad faith threat of civil action does not constitute infliction of "fear" under Hobbs Act); *Peterson v. Philadelphia Stock Exchange*, 717 F. Supp. 332, 336 (E.D. Pa. 1989) ("The ordinary resort to legal process does not rise to the level of a 'wrongful use' of force or fear" under Hobbs Act); *G–I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001); *Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D.Cal. 2001); *von Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134, 1143–45 (S.D.N.Y. 1987).

Pennsylvania's Crimes Code defines extortion as, *inter alia*, obtaining property of another by "threatening to accuse anyone of a criminal offense." 18 Pa.C.S.A. § 3923(a)(2). Despite filing several amended complaints, Husband consistently failed to assert that Appellees threatened to imprison Husband for a **criminal** offense. Because the threat allegedly took place during divorce proceedings, it could have been a threat to seek imprisonment

- 16 -

for **civil** contempt—sanctions that occasionally take place during combative divorce cases. **See**, **e.g.**, **Sinaiko v. Sinaiko**, 664 A.2d 1005, 1010 (Pa. Super. 1995) (court acted within its discretion by ordering husband's imprisonment for failure to pay court-ordered attorney fees).

Next, Husband alleges that several of Appellees' acts constitute mail fraud, including (1) a Protection From Abuse order procured against him through fraud, (2) the seizure of his passport based on the false claim that he was planning to flee to Vietnam, (3) the fraudulent procurement of a court order freezing his assets and thus shutting down his business, and (4) the "deceitful" challenge to the divorce settlement in the trial court and Superior Court after Wife's acceptance of settlement proceeds. The trial court correctly held that Husband failed to allege mail fraud.

The elements of the predicate acts of mail fraud are: "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or of wire communications in furtherance of the fraudulent scheme." **United States v. Syme**, 276 F.3d 131, 142 n.3 (3d Cir. 2002). The defendant must have the specific intent to defraud, which "may be found from a material misstatement of fact made with reckless disregard for the truth." **United States v. Coyle**, 63 F.3d 1239, 1243 (3d Cir. 1995). The scheme to defraud "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive

persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978).

A civil RICO plaintiff alleging mail fraud must show that his injuries were proximately caused by the defendant's scheme to defraud, and that he detrimentally relied on the defendant's misrepresentations. *Bank of China v. NBM L.L.C.*, 359 F.3d 171, 176 (2d Cir. 2004); *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996) ("where the predicate act giving rise to civil liability under RICO was alleged to have been mail fraud, prospective plaintiffs must, in order to demonstrate their standing to sue, plausibly allege both that they detrimentally relied in some way on the fraudulent mailing and that the mailing was a proximate cause of the alleged injury to their business or property"); *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 562 (5th Cir. 2000); *Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993); *Appletree Square I v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360 (11th Cir. 2002); *Pelletier v. Zweifel*, 921 F.2d 1465, 1499–1500 (11th Cir. 1991). Similarly, district courts in the Third Circuit have required a showing of reliance either as a necessary condition of proximate causation or as an element of a mail fraud violation. *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 410 (E.D. Pa. 2006); *Cooper v. Broadspire Servs., Inc.*, 2005 WL 1712390, at *8 n. 7 (E.D. Pa. 2005); *Smith v. Berg*, 2001 WL 1169106, at *3 (E.D .Pa. 2001); *Allen*

*Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network*, 2001 WL 41143, at \*4 (E.D.Pa. 2001); *Rodriguez v. McKinney*, 156 F.R.D. 112, 116 (E.D.Pa. 1994).

A plaintiff who knows a representation to be untrue cannot use it to claim fraud in a civil RICO action. The Third Circuit has framed this proposition as the definition of a misrepresentation itself: there can be no misrepresentation if the plaintiff knows the representation to be false. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528–29 (3d Cir. 1998) (defendant did not violate mail fraud statute by seeking audit of plaintiff because plaintiff knew defendant's "true motivation" for seeking audit); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996) (no mail fraud predicate based on defendant's "scheme" to charge plaintiff more than contract price because plaintiff admitted it knew defendant was not complying with contract).

In this case, Husband does not allege that he relied on any of Appellees' representations to his detriment; he always regarded Appellees' representations as false. The third amended complaint merely alleges that Appellees misled the trial court, not Husband. Under the authorities collected

above, none of Appellees' representations constitutes predicate acts of mail fraud.[4]

Finally, Husband accuses Appellees of seizing property from his mansion, "despoil[ing]" the mansion and grounds, and filing contempt motions over discovery demands in the divorce proceedings. None of these acts constitutes racketeering activity. Assuming that Appellees broke into the mansion to seize personal property and damage the house, this at most constitutes burglary, which is not a predicate offense under RICO. *See* 18 U.S.C. § 1961(1); 18 Pa.C.S.A. § 3502 (definition of burglary). It does not constitute the RICO predicate act of robbery, because Appellees did not inflict serious bodily injury on Husband or threaten him or intentionally put him in fear of immediate bodily injury. *See* 18 Pa.C.S.A. § 3701 (definition of robbery). Further, there is no authority that the filing of contempt motions during litigation constitutes a RICO predicate act.

---

[4] Appellees argue that Husband fails to state a valid cause of action for common law fraud in his third amended complaint. It was not necessary for Appellees to make this point, because Husband did not make any argument concerning common law fraud in his opening brief. In any event, Husband does not have a valid action for common law fraud for the same reason that his RICO fraud claim fails, *i.e.*, Husband never relied to his detriment on Appellees' representations. *See Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (common law fraud requires proof of plaintiff's justifiable reliance on defendant's misrepresentation).

Thus, Husband fails to allege a single act of racketeering against Appellees. Even if he did, the third amended complaint fails to satisfy RICO's "pattern" element.

The United States Supreme Court construes the pattern element to require "continuity" and "relatedness," *i.e.,* the RICO predicates must pose a threat of continuous criminal activity and must be related to each other. ***H.J. Inc. v. Northwestern Bell Tel. Co.***, 492 U.S. 229, 239 (1989). The acts alleged by Husband do not fulfill the continuity test.

Continuity requires conduct that "amount[s] to or pose[s] a threat of continued criminal activity." ***H.J.***, 492 U.S. at 239. Such continuity can be closed-ended or open-ended. ***Id.*** Criminal activity that occurred over a long period of time in the past has closed-ended continuity, regardless of whether it may extend into the future. ***Id.*** at 242. As such, closed-ended continuity is "primarily a temporal concept," ***Spool v. World Child Int'l Adoption Agency***, 520 F.3d 178, 184 (2d Cir. 2008), and requires that the predicate crimes extend "over a substantial period of time." ***H.J.***, 492 U.S. at 242. For example, the Second Circuit generally requires that the crimes extend over at least two years. ***Spool***, 520 F.3d at 184. Open-ended continuity is criminal activity "that by its nature projects into the future with a threat of repetition." ***H.J.***, 492 U.S. at 241. This encompasses activity that by its very nature includes a future threat, such as a protection racket. ***H.J.***, 492 U.S. at 242.

In this case, Husband pleads a closed-ended scheme, since it allegedly began in 2007 and ended in 2013, and there is no threat of repetition.

Many federal courts have held that a civil RICO claim does not lie when the plaintiff alleges a closed-ended scheme with only one objective and one victim. *See Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 530 (1st Cir. 2015) (quoting *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)) ("our common sense dictates that where, as here, a closed-ended series of predicate acts . . . constitute[s] a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities . . . RICO liability cannot attach under a theory of a closed pattern of racketeering"); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006) (no RICO liability where defendant had "single objective" and there were "no facts suggesting that the scheme would continue beyond the [d]efendants accomplishing their goal"); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (where there is "single scheme, single injury, and few victims," it will be "virtually impossible" to state RICO claim); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (fraudulent acts lasting seven years by single entity against single victim did not establish racketeering pattern). Similarly, the Third Circuit has observed that there is no pattern of racketeering where the object of fraud is a "single piece of real estate," or an attempt "to force a single business entity bankrupt," or is "directed at a single

- 22 -

entity," or can generally be characterized as a "single-scheme, single-victim" transaction. ***Hughes v. Consol-Pennsylvania Coal Co.***, 945 F.2d 594, 610-11 (3d Cir. 1991) (citing ***Banks v. Wolk***, 918 F.2d 418 (3d Cir. 1990); ***Marshall–Silver Construction Co. v. Mendel***, 894 F.2d 593 (3d Cir. 1990); ***Kehr Packages v. Fidelcor, Inc.***, 926 F.2d 1406, 1418 (3d Cir. 1991)); ***see also Stoss v. Singer Fin. Corp.***, 2010 WL 678115, at *7 (E.D. Pa. 2010) (citing ***Hughes***).

In the present case, Husband merely alleges a closed-ended scheme with one objective (Husband's financial ruination) and one victim (Husband). In view of the decisions summarized above, this does not fulfill RICO's "pattern" element.

Husband also asserts that Appellees are liable for a RICO conspiracy. The RICO statute provides that it shall be unlawful for any person to conspire to violate the other RICO provisions. 18 U.S.C. § 1962(d). However, "any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." ***Lum v. Bank of America***, 361 F.3d 217, 227 (3d Cir. 2004). Since the third amended complaint fails to allege a RICO action under

Section 1962(c), Husband's claim of conspiracy under Section 1962(d) falls short as well.[5]

**Abuse of process.** Appellees argued in their preliminary objections to Husband's third amended complaint that his claim for abuse of process was untimely under Pennsylvania's two-year statute of limitations, 42 Pa.C.S.A. § 5524(7). The trial court agreed and dismissed this action.

Although it is improper to raise a statute of limitations defense in preliminary objections, Husband failed to file preliminary objections to Appellees' preliminary objections challenging Appellees' procedural error. Thus, the trial court had the authority to rule on the statute of limitations issue. *Preiser v. Rosenzweig*, 614 A.2d 303, 305 (Pa. Super. 1992) ("[w]here a party erroneously asserts substantive defenses in preliminary objections rather than [] raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the defective preliminary objections, raising the erroneous defenses, waives the procedural defect and allows the trial court to rule on the preliminary objections").

The common law cause of action for abuse of process "is defined as the use of legal process against another primarily to accomplish a purpose for

---

[5] Because we conclude that Husband fails to state a valid RICO claim, we need not address his arguments that he filed this claim within the applicable statute of limitations.

which it is not designed." ***Rosen v. American Bank of Rolla***, 627 A.2d 190, 192 (Pa. Super. 1993).

> To establish abuse of process, the plaintiff must show that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.
>
> Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question.

***Werner v. Plater–Zyberk***, 799 A.2d 776, 785 (Pa. Super. 2002).

> The Judicial Code provides:
>
> The following actions and proceedings must be commenced within two years: . . .
>
> (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud . . .

42 Pa.C.S.A. § 5524(7). This limitation period applies to actions for abuse of process. ***See Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien***, 908 A.2d 875, 879 n.4 (Pa. 2006) (applying Section 5524 to abuse of process claim); ***Langman v. Keystone National Bank & Trust Co.***, 672 F. Supp. 2d 691, 697 (E.D.Pa. 2009) (same).

Unlike an action for wrongful use of civil proceedings under 42 Pa.C.S. § 8351, the tort of abuse of process does not require the plaintiff to demonstrate that the underlying action terminated in his favor. ***P.J.A. v.***

***H.C.N.***, 156 A.3d 284, 291 (Pa. Super. 2017). Thus, the statute of limitations for abuse of process begins running not when the underlying action terminates in the plaintiff's favor, but when the defendant uses legal process against the plaintiff for an improper purpose, which in turn causes harm to the plaintiff. ***Id.*** (former husband's abuse of process claim against former wife accrued when wife filed answer with new matter in child custody proceeding that allegedly contained false allegations, not when the trial court denied wife's request for sole legal custody of the child).

Husband commenced this action on May 19, 2014. Husband avers in his third amended complaint that Appellees abused process by forcing him to enter the global settlement agreement on August 22, 2011. Because this took place more than two years before Husband filed suit, the trial court correctly held that his action for abuse of process is time-barred.

**Wrongful use of civil proceedings.** The tort of wrongful use of civil proceedings statute, also known as the Dragonetti Act, is codified at 42 Pa.C.S.A. §§ 8351-9354. Section 8351 provides in relevant part:

> (a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a).  In addition,

> [a] person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:
>
> (1) reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
>
> (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

The statute of limitations for Dragonetti actions is two years. *Buchleitner v. Perer*, 794 A.2d 366, 372 (Pa. Super. 2002).  Unlike common law abuse of process, the statute of limitations for a Dragonetti action does not begin running until the underlying proceedings terminate. *Id.* at 376.  Here, the underlying proceedings did not terminate until March 2013, following Wife's unsuccessful appeal at 37 WDA 2012.  Thus, Husband's Dragonetti action was timely filed.

The trial court determined, however, that Husband failed to state a valid Dragonetti action.  The third amended complaint did not satisfactorily allege that Appellees lacked probable cause to appeal from the trial court's December 8, 2011 order granting Husband's petition for special relief seeking

enforcement of the parties' global settlement agreement. The trial court reasoned:

> [Husband] fails to plead that the primary purpose for the proceedings was not that of securing adjudication of the claim on which the proceedings were based, or facts to support that [Appellees] did not have probable cause for continuing said proceedings. Although [Husband] avers broadly that [Appellees] had no probable cause for appealing the settlement agreement, [Husband's] pleading is a conclusory statement. Facts to support a lack of probable cause must be pleaded. In his Third Amended Complaint, [Husband] does not allege any facts to support his conclusory allegations that probable cause to appeal the settlement agreement did not exist at the time when [Appellees] filed their appeal.

Trial Ct. Op., 6/9/17, at 16. We agree. We further note that our February 22, 2013 memorandum in Wife's appeal does not state or suggest that Appellees' appeal was frivolous or in bad faith.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2018