J-A06008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HARRY SCHMIDT AND GARY SCHMIDT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ROBERT ROSIN, INDIVIDUALLY AND AS ROBERT ROSIN, ESQ. | |
| Appellee | No. 1310 EDA 2019 |

Appeal from the Order Entered April 2, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 2017-28489

BEFORE:  STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JULY 08, 2020**

Appellants, Harry Schmidt ("Harry") and Gary Schmidt ("Gary"), appeal from an order granting the preliminary objections of Appellee, Robert Rosin, Esquire, to Appellants' second amended complaint ("SAC") and dismissing the SAC with prejudice in this legal malpractice action.  We affirm in part, vacate in part, and remand for further proceedings.

The SAC alleges Harry and Gary Schmidt are father and son who live at the same address in Jamison, Pennsylvania.  SAC, ¶¶ 1-2.  From 1965 until 2017, Appellee represented Harry for various legal matters.  From 1967 until 2015, Harry had a business, H&R Industries, Inc. ("H&R"), and Appellee handled H&R's legal matters.  *Id.* at ¶¶ 7-8.

_____

[*] Former Justice specially assigned to the Superior Court.

The SAC claims that Appellee was negligent in two respects. First, Appellee allegedly provided negligent representation in an action brought by Bollard & Associates against Harry and H&R for past due sales commissions ("Bollard I"). The SAC states that in 2011, Appellee entered his appearance on behalf of Harry and H&R (but not Gary) in Bollard I. On October 29, 2015, a verdict was entered in favor of Bollard and against Harry and H&R in the amount of $402,815.73. On February 9, 2016, the trial court molded the verdict and entered judgment against Harry and H&R in the amount of $405,984.07.[1] The SAC asserts that Appellee "negligently handled" Bollard I by "failing to challenge the claimed damages and causing and resulting in an excessive judgment." SAC, ¶ 27(b).

Second, the SAC alleges that in 2003, as Harry approached age 65, he requested Appellee to transfer all of his assets to Gary for estate planning purposes. *Id.* at ¶ 15. In April 2010, following Harry's hospitalization for illnesses, Harry "continued to make his estate planning requests to [Appellee]," and Appellee "agreed and promised" to handle these requests.

---

[1] The SAC does not mention that Harry (but not H&R) appealed the judgment to this Court at No. 1038 EDA 2016. Nevertheless, we take judicial notice of this prior appeal under the precept that a court may take judicial notice of other proceedings involving the same parties. *Hvizdak v. Linn*, 190 A.3d 1213, 1218 n.1 (Pa. Super. 2018). In a memorandum decision entered on October 24, 2017, this Court affirmed the judgment against Harry. We held that the evidence was sufficient to establish that Harry promised to pay a debt that H&R owed to Bollard, notwithstanding Harry's testimony denying that he made any personal guarantee.

*Id.* at ¶ 16. In 2016, while Bollard I was pending, Appellee prepared documents transferring Harry's real estate and business interests in a partnership, PA Associates, to Gary. *Id.* at ¶¶ 23-24. In December 2017, Bollard filed an action against Appellants and Appellee alleging fraudulent transfer of Harry's assets in violation of Pennsylvania's Uniform Fraudulent Transfer Act[2] ("Bollard II"). *Id.* at ¶ 25. As a result of Bollard II, Appellants entered into an agreement to satisfy the judgment in Bollard I in the amount of approximately $400,000.00. *Id.* at ¶ 26. Appellants allege that Appellee was negligent for "failing to transfer the assets from [Harry] to [Gary] when requested." *Id.* at ¶ 27(a).

Appellants commenced this action via writ of summons and then filed a complaint on September 7, 2018. Appellee filed preliminary objections to the complaint asserting, *inter alia*, that Appellants failed to state a cause of action. Appellants filed an amended complaint. In response, Appellee again filed preliminary objections. On January 8, 2019, Appellants filed the SAC. Once again, Appellee filed preliminary objections. On April 2, 2019, the trial court sustained Appellee's preliminary objections and dismissed the SAC for failing to state a cause of action. Appellants filed a timely appeal, and the trial court issued a Pa.R.A.P. 1925 opinion without ordering Appellants to file a statement of matters complained of on appeal.

Appellants raise three issues in this appeal:

---

[2] 12 Pa.C.S.A. §§ 5101-5114 (referred to herein as "the PUFTA").

- 3 -

1. Whether the Trial Court committed an error of law when it sustained the preliminary objections and dismissed [the SAC] on the grounds of demurrer [by] incorrectly stating that [Appellants] failed to allege sufficient facts to support a viable cause of action or on which [Appellee] could prepare a defense?

2. Where [the SAC] alleges at paragraphs 5, 27, 27(b) and 28 that [Appellee] failed to defend, contest and challenge the damages claimed by Bollard & Associates in the underlying trial caused and resulted in an improper and excessive verdict causing financial losses in excess of $400,000, the trial court committed an error of law in ruling that [Appellants] failed to allege a viable legal malpractice cause of action?

3. Where [the SAC] alleges at paragraphs 5, 9, 15, 16, 20, 22, 23, 27, 27(a) and 28 that [Appellee] also failed to timely transfer Harry Schmidt's assets to his son, Gary Schmidt prior to the Bollard Judgment, causing him to suffer financial losses in excess of $400,000, the trial court committed an error of law in ruling that [Appellants] failed to allege a viable legal malpractice cause of action?

Appellants' Brief at 4.

Our standard of review from the order granting Appellee's preliminary objections in the nature of a demurrer and dismissing the SAC is well-settled. We must

determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it

should be resolved in favor of overruling the preliminary objections.

***Estate of Denmark ex rel. Hurst v. Williams***, 117 A.3d 300, 305 (Pa. Super. 2015).

In their first two arguments, which we will address together, Appellants contend the trial court erred by concluding that Appellants failed to state a cause of action for legal malpractice against Appellee due to his negligence in Bollard I. We conclude that the SAC states a valid cause of action as to Harry but not as to Gary.

To establish a claim of legal malpractice, the plaintiff must demonstrate three elements: (1) employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) such negligence was the proximate cause of the damage to the plaintiff. ***Kituskie v. Corbman***, 714 A.2d 1027, 1029 (Pa. Super. 1998). Gary has no cause of action against Appellee with regard to Bollard I, because the SAC does not allege that Gary was a party in this action or that he retained Appellee to represent him therein. ***Id.***

With regard to Harry, the SAC avers that Appellee "negligently handled" Bollard I by "failing to challenge the claimed damages and causing and resulting in an excessive judgment." SAC, ¶ 27(b). In reviewing this allegation, we must remember that even when a complaint is "less than a model pleading," it "may not be dismissed unless [we are] convinced that, as a matter of law, no recovery is possible under the facts as pled." ***McClellan***

***v. Health Maintenance Organization of Pennsylvania***, 604 A.2d 1053, 1056 (Pa. Super. 1992). Although the SAC could have been clearer, we construe it to allege that Appellee failed to challenge some or all of the damages claimed by Bollard in Bollard I, and that such a challenge would have reduced or eliminated the award against Harry. Moreover, a lower verdict might have reduced the amount of Harry's participation in the Bollard II settlement. Thus, we cannot conclude that "as a matter of law, no recovery is possible" for Harry under the SAC. ***Id.***

In their third argument, Appellants contend that Appellee was negligent for failing to effectuate the timely transfer of Harry's assets to Gary, thus exposing those assets to execution in Bollard II. The trial court determined that Appellants failed to allege that Appellee's conduct caused damage to Appellants. We disagree.

Construing all averments in the SAC and all reasonable inferences arising therefrom as true, we understand the SAC to allege the following:

(1) In 2003 and 2010, Harry asked Appellee to transfer Harry's real and personal assets to Gary.

(2) In 2010, almost one year before Bollard filed suit in Bollard I, Appellee agreed to effectuate the transfers from Harry to Gary.

(3) Appellee did not prepare documents effectuating the asset transfers until 2016.

(4)   In 2016, Bollard I was being litigated.  As a result, the asset transfers could be deemed fraudulent conveyances, leaving the assets vulnerable to execution under PUFTA.

(5)   Appellants were forced to settle Bollard II by paying $400,000.00 to Bollard.

In our view, these allegations state a cause of action against Appellee for failing to protect assets by effectuating their transfer to Gary at a time when the transfer would not have been considered a fraudulent transfer and thus, subject to execution to satisfy the judgment.

The trial court asserts that another legal malpractice action, ***412 North Front Street Associates, L.P. v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646 (Pa. Super. 2016), is similar to the present case.  Trial Ct. Op. at 3.  According to the trial court,

> the complaint [in ***412 North Front Street***] failed to offer essential facts explaining why plaintiff believed his lawyer had negligently handled promissory note litigation, leading to loss of plaintiffs' real property at a sheriff's sale.  Also, as to causation, the ***412 North Front Street*** complaint was devoid of facts showing how alleged malpractice led to the sheriff's sale—or what the attorney should have done to achieve a different and better result.

***Id.***  We see a distinction between ***412 North Front Street*** and the present case.  In ***412 North Front Street***, this Court held that the trial court properly sustained a demurrer to the plaintiffs' complaint because the plaintiffs failed to allege what the defendant law firm could have done to protect the plaintiffs' property.  We reasoned:

Most problematic for [the plaintiffs] was that no allegation provided a causal connection between either the alleged breach of contract or professional duty, respectively, and [the plaintiffs]' proclaimed losses. Specifically, the complaint alleged that Abington Bank confessed judgment against all [the plaintiffs] after it declined [the plaintiffs]' request, presented through the advocacy of [the law firm], to restructure or modify the terms of the loan agreement between the lender bank and [plaintiff] 412 North Front Street. [The plaintiffs] failed to allege how, but for [the law firm]'s conduct, they would have avoided what, by every indication in the pleading, was Abington Bank's inevitable collection of a defaulted loan through sheriff's sale of property owned by 412 North Front Street. Allegations of fact essential to establishing that [the law firm]'s conduct caused [the plaintiffs]' losses were, therefore, absent from the complaint.

*Id.*, 151 A.3d at 657. Unlike the complaint in **412 North Front Street**, the SAC herein, accepted as true for present purposes, establishes what Appellee should have done to protect Appellants' interests. Had Appellee transferred the assets when first requested in 2003 and then again in 2010, almost one year before Bollard I, the assets would have been beyond Bollard's reach under PUFTA and Appellants would have been judgment proof. By failing to transfer the assets until 2016, years after Bollard I began, Appellee left the assets subject to execution under PUFTA, thus forcing Appellants to enter into the settlement in Bollard II.

Appellee argues that Harry fails to state a cause of action because "Harry was not harmed by the non-transference of his assets. The result of Harry's assets not being transferred was that Harry had more assets tha[n] he otherwise would have had if the transfers occurred." Appellee's Brief at 15. Even assuming Harry "had more assets tha[n] he otherwise would have had,"

the SAC alleges that he was forced to participate in the settlement at the level he did in Bollard II as a result of having greater assets subject to execution. Thus, the SAC satisfactorily alleges that Harry suffered financial harm and may seek recovery from Appellee.

Next, Appellee argues that Gary has no right of action because there is no contractual privity between Gary and Appellee. Appellee emphasizes that Harry alone, not Gary, employed Appellee to transfer the assets. In our view, the SAC satisfactorily alleges that Gary has a right of action against Appellee for breach of contract as a third party beneficiary of the agreement between Appellee and Harry.

A review of our Supreme Court's jurisprudence on third party beneficiary law places this issue in context. In *Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828 (1950) (plurality), our Supreme Court held that in order for a third party beneficiary to have standing to recover on a contract, both contracting parties must express an intention that the third party be a beneficiary, and this intention must affirmatively appear in the contract itself. *Id.* at 830–31. However, in *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), the Court "overrule[d] *Spires* to the extent that it states the exclusive test for third party beneficiaries." *Id.* at 751.

*Guy* allowed the beneficiary of a will to recover for legal malpractice against an attorney, despite the fact that the beneficiary did not have privity of contract with the attorney and was not named specifically as an intended

beneficiary of the contract. *Id.* The plaintiff was expressly named as an heir in an executed will, but the will was held invalid because the plaintiff herself witnessed the testator's signature, at the lawyer's direction, and in violation of then-applicable New Jersey law.

*Guy* adopted Restatement (Second) of Contracts § 302 in determining that the plaintiff had standing to make a claim as an intended third-party beneficiary of the contract for legal services between the testator and his lawyer. *Id.* The Court utilized the Section 302 analysis to devise the following two-part test for determining whether a person is an intended third-party beneficiary of a contract between others, such that the third party may enforce the contract: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 751. The Court stated the first part of the test sets forth a standing requirement, which restricts application of the second part of the test, which in turn "defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b))." *Id.* The Court applied this test to hold that a third party to a legal services contract has standing to bring an action against the testator's lawyer to enforce a failed legacy where "the intent to benefit [the

third party] is clear and the promisee (testator) is unable to enforce the contract." *Id.* at 747.

Nine years after *Guy*, the Court held in *Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992), that purchasers of lots in a residential subdivision, who were required by subdivision restrictions recorded of public record to have their house construction plans reviewed and approved by an architect retained by the subdivision developer, were intended beneficiaries of an implied contract between the developer and the architect. Consequently, the purchasers had a cause of action against the architect for any breach of said contract for his alleged failure to properly review and approve the plans of other lot purchasers in the subdivision. Blending the *Spires* and *Guy* rules, *Scarpitti* instructed that a party becomes a third party beneficiary

> only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires* [], unless the circumstances are so compelling that **recognition of the beneficiary's right is appropriate to effectuate the intention of the parties**, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or **the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance**. *Guy* [].

*Id.*, 609 A.2d at 150-51 (emphasis added).[3]

In view of this jurisprudence, we conclude that the SAC asserts a right of action by Gary against Appellee as a third party beneficiary. The SAC

---

[3] The Supreme Court recently revisited the third party beneficiary doctrine in *Estate of Agnew v. Ross*, 152 A.3d 247 (Pa. 2017). We address *Agnew* *infra* and conclude it is distinguishable from the present case.

- 11 -

alleges that Harry requested Appellee to transfer his assets to Gary, his son, in 2003 and 2010, and Appellee "agreed and promised" in 2010 to carry out the transfer. *Id.* at ¶¶ 15-16. Furthermore, Harry's intentions never changed, since Appellee ultimately prepared the transfers in 2016, and Harry executed them at that time. *Id.*, ¶¶ 23-24. Thus, recognition of Gary's rights as beneficiary is appropriate to effectuate Harry's intention to transfer his assets to Gary and Appellee's intention to effectuate Harry's request. Furthermore, the circumstances indicate that Harry intended to give Gary the benefit of the promised asset transfer. *Scarpitti*, 609 A.2d at 151.

We recognize that in *Agnew*, the Supreme Court's most recent decision on third party beneficiary law, the Court held that beneficiaries who were named in an unexecuted trust document could not claim status as third-party beneficiaries of the legal contract between the testator and his attorney. *Id.* at 264. The Court reasoned that unexecuted estate documents did not reliably reflect the testator's intent because "[a] testator may change an estate plan at any time, adding and subtracting legatees, increasing and decreasing bequests." *Id.* at 263. Here, however, the SAC adequately alleges that Harry intended to benefit Gary. Not only did Harry instruct Appellee twice to transfer his assets to Gary, but in contrast to the testator in *Agnew*, Harry actually executed documents in 2016 that transferred his assets to Gary. Thus, we do not believe *Agnew* to apply to the third party beneficiary issue in this case.

Finally, Appellee asks us to affirm on the ground that Appellants' action is time-barred because eight years have elapsed between Harry's second request for transfer documents (2010) and the commencement of this case (2018). Although we have the authority to affirm on any ground, ***Wilson v. Plumstead Tp. Zoning Hearing Bd.***, 936 A.2d 1061, 1065 n.3 (Pa. 2007), we decline to do so here. The statute of limitations is an affirmative defense that should be raised in new matter.[4] Pa.R.C.P. 1030. No new matter has been filed in this case because the trial court dismissed this action at the preliminary objection stage. Thus, it would be inappropriate to address the statute of limitations at this juncture.

For these reasons, we affirm the trial court's order to the extent that it dismissed Gary's claim that Appellee provided negligent representation in Bollard I. We vacate the trial court's order to the extent that it dismissed (1) Harry's claim that Appellee provided negligent representation in Bollard I and (2) the claim of both Appellants that Appellee failed to transfer Harry's assets to Gary in a timely manner that would have protected these assets from Bollard's reach.

---

[4] There is one exception to this principle. "Where a party erroneously asserts substantive defenses in preliminary objections rather than to raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the defective preliminary objections, raising the erroneous defenses, waives the procedural defect and allows the trial court to rule on the preliminary objections." ***Richmond v. McHale***, 35 A.3d 779, 782 (Pa. Super. 2012). This exception does not apply here, because Appellee did not raise the statute of limitations in his preliminary objections to the SAC.

Order affirmed in part and vacated in part. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/8/2020*