J-A04018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| STEVEN RUBIN, EXECUTOR OF THE ESTATE OF MILTON RUBIN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEPHEN KANYA, A/K/A STEVEN KANYA AND INSECTARIUM & BUTTERFLY PAVILION, INC. | |
| Appellee | No. 2049 EDA 2019 |

Appeal from the Order Entered May 8, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 170600979

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 1, 2022**

In 1989, Milton Rubin loaned Appellee Stephen Kanya $350,000.00 to purchase real property ("the Property") located in Philadelphia. The loan was secured by a mortgage that recited material terms of the loan. During the 1990's, Kanya defaulted on the loan and Rubin died. In 2010, Kanya filed for Chapter 11 bankruptcy in Florida. On July 1, 2011, the Florida bankruptcy court confirmed a reorganization plan in which Kanya and Rubin's estate agreed that (1) the estate had a mortgage on the Property secured by a lien of $350,000.00, (2) the estate would retain its lien and be paid in accordance with the terms of Kanya's "contract,"[1] and (3) Kanya would pay over

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Kanya's Confirmation Plan, § 4.9.1.

$35,000.00 in arrearages on the mortgage. Over the next five years, Kanya made sporadic payments to the estate, but in 2016, Kanya transferred the property to Appellee Insectarium and Butterfly Pavilion, Inc. ("IBP"). In 2017, the estate filed a mortgage foreclosure action against Kanya and IBP. Kanya admitted all allegations in the estate's amended complaint, but IBP vigorously defended against the estate's action. Following a non-jury trial, the court entered a decision against the estate and in favor of Kanya and IBP on the ground that the statute of limitations expired in 1994. Rubin's estate appeals from the judgment entered on this decision.

We hold that the trial court failed to recognize that the bankruptcy court's confirmation of Kanya's reorganization plan on July 1, 2011 constituted a binding contract. Any breach of this contract could not have taken place until after July 1, 2011, and therefore the statute of limitations for any such breach could not have begun running until after July 1, 2011. As a result, the trial court erred by concluding that the statute of limitations expired in 1994. We vacate the judgment and remand for a new trial.

The trial court summarized the evidence adduced during trial as follows:

> [The estate] asserted that on March 14, 1989, Milton Rubin loaned Kanya $350,000.00 to purchase the property at 8046 Frankford Avenue (the "Property"). This loan was allegedly made pursuant to a purchase money note. However, the original note was never recorded and no copy was presented at trial. The debt was secured by a mortgage on the Property which was also executed on March 14, 1989. The mortgage was recorded and referred to the alleged note. The mortgage was not executed under seal.

The mortgage required [Kanya] to make sixty monthly payments of interest only commencing on April 1, 1989. The loan was also a balloon mortgage, and Kanya was required to make a principal payment of $50,000.00 by September 14, 1990 (18 months from the date of closing). The entire principal balance of $300,000.00 with interest[2] was due on March 1, 1994. The mortgage provided that failure to timely make these payments constituted an event of default. Kanya failed to make these payments and therefore defaulted on the loan on September 14, 1990.

The mortgage also prohibited the transfer of the Property by the mortgagor and provided that such transfer constituted an event of default. Kanya transferred the Property twice. On January 15, 1999, he transferred ownership of the Property from himself solely to himself and his wife. On August 18, 2016, Kanya transferred the Property to [IBP] by quitclaim deed. Both of these actions were further events of default.

Over the next 27 years[,] Kanya allegedly made irregular payments to the mortgagee, originally to Milton Rubin and then, after Milton Rubin's death on January 13, 1996, to Rubin's estate. However, no records were presented at trial detailing any evidence of the original transaction or of any payments made personally by Kanya. [The estate] presented evidence of checks it received from Kanya purportedly for mortgage payments but no detailed statements were ever produced. There was no way of knowing what these payments were for. Nor were they made pursuant to a consistent schedule.

The estate claimed records related to the mortgage, including the original note, were lost in a fire in 2004. Kanya also claimed he lost his personal records. None [of] these explanations were substantiated and the Court found them not to be credible. There were no attempts to reconstruct the records of this loan, e.g., [through] checks and HUD statements, even with a cooperating defendant as Kanya appeared to be.

On February 22, 2010, Kanya filed for bankruptcy protection in Florida in the case styled *In Re Stephen Kanya*, Bkrtcy. M.D. Fla., Chapter 11 Case No. 8:10-bk-03746-CPM. The estate made a claim in these proceedings for monies owed under the Mortgage.

---

[2] The mortgage stated that the annual interest rate was ten percent.

- 3 -

On July 1, 2011, an Order was issued by the Bankruptcy Court affirming Kanya's Amended Plan of Reorganization which admitted only $35,000.00 in indebtedness.[3] This is not close to the amount alleged by the estate. Said plan mentions the "secured claim of Steven Rubin" under the mortgage and provides "th[e] creditor shall retain its lien and be paid in accordance with the terms of his contract, and shall be impaired in the Plan."

At some point John Cambridge became involved with the operation of Kanya's insect museum which is located at the Property subject to the instant mortgage. Cambridge assisted with the building of a new butterfly pavilion on the Property which was supposed to open in May of 2016 and ultimately opened in February of 2017. On August 18, 2016, Kanya and his wife executed a quitclaim deed transferring the Property to [IBP]. At that time Kanya owned 70% of the corporation and Cambridge 30%. This deed was recorded on December 2, 2016. Kanya and Cambridge later had a falling out and Kanya is no longer an owner of [IBP] or the real estate at issue.

On May 2, 2017, Kanya and the estate executed an alleged copy of the original note. The Court was convinced this note was a fabrication of a document executed 27 years earlier. On May 9, 2017, the estate sent Kanya a letter constituting a notice of default and demand for payment by June 8, 2017. On June 9,

---

[3] The pertinent provision of Kanya's plan stated in its entirety:

4.9 Class IX: Secured Claim of Steven Rubin

4.9.1 The Claim of Steve Rubin consists of a mortgage secured by a lien on property located at 8046-48 Frankford Avenue, Philadelphia, PA 19136, in the amount of $350,000.00. The creditor shall retain its lien and be paid in accordance with the terms of **his contract**, and shall be Impaired in the Plan. Debtor's arrearage on this mortgage in the amount of $35,463.00 shall be cured by making equal monthly payments of $1,000.00 until said arrearage is cured.

IBP Exhibits at 203 (emphasis added). Read in context, "Steve Rubin" clearly meant "Steven Rubin in his capacity as personal representative of the estate of Milton Rubin," *i.e.*, the estate herein.

2017, the estate filed the instant complaint [and later an amended complaint]. . . Kanya admitted all of the allegations [in the amended complaint].

Trial Court Opinion, 10/4/19, at 2-4 (with minor additions).

The record reflects that Rubin's estate filed this action against Kanya and IBP on June 9, 2017. Subsequently, the estate filed a one-count amended complaint seeking foreclosure of the mortgage,[4] claiming, *inter alia*, that Kanya defaulted under the 1989 note and mortgage by failing to make all required payments and further defaulted by transferring ownership of the Property to IBP. The amended complaint averred that the final partial payment by Kanya was in late 2016.

Kanya's bankruptcy docket[5] reflects that on February 27, 2018, almost nine months after filing suit, Rubin's estate filed a motion in the Florida bankruptcy court seeking relief from the automatic stay in Kanya's ongoing bankruptcy case to prosecute a mortgage foreclosure action against Kanya in

_____

[4] The amended complaint did not include claims for any other cause of action, such as breach of contract.

[5] We generally cannot take judicial notice of records from other cases, *Hvizdak v. Linn*, 190 A.3d 1213, 1218 n.1 (Pa. Super. 2018), but there are exceptions to this rule. We can, for example, take judicial notice of other proceedings involving the same parties. *Id.* Here, Appellant and Kanya are both parties in Kanya's Chapter 11 bankruptcy, where Kanya is the debtor and Appellant is a creditor who filed a proof of claim against Kanya that was recognized under Kanya's reorganization plan. Furthermore, the record in this case includes multiple references by the trial court and the parties to Kanya's bankruptcy proceeding. Accordingly, we take judicial notice of the docket in Kanya's bankruptcy case.

Pennsylvania state court. On March 7, 2018, the Bankruptcy Court granted the estate relief from the automatic stay to prosecute the foreclosure action in Pennsylvania against Kanya.

Following a two-day non-jury trial in February 2019, the trial court entered a decision in favor of Kanya and IBP and against the estate. The estate filed timely post-trial motions seeking judgment n.o.v. or, in the alternative, a new trial. Before the court decided the post-trial motions, the estate filed a notice of appeal to this Court. Shortly thereafter, the court denied the estate's post-trial motions and entered judgment in favor of Kanya and IBP. The premature notice of appeal does not affect the validity of the appeal due to the subsequent entry of judgment. Pa.R.A.P. 905(a) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"). Both the estate and the trial court complied with Pa.R.A.P. 1925.

In its Rule 1925 opinion, the trial court gave the following reasons for entering a decision against the estate:

> The Court found that Kanya defaulted on the mortgage on September 14, 1990, when he failed to make the first of two required principal payments under the mortgage contract. [The estate] filed the instant suit on June 9, 2017, approximately 27 years later. The statute of limitations for a mortgage contract not under seal is four years. 42 Pa.C.S.[A.] § 5525. Consequently, the statute of limitations would have long expired by the time of filing of this suit unless the debtor acknowledged the debt.

The statute of limitations may be tolled by a renewed promise to pay the debt. ***Huntingdon Finance Corp. v. Newtown Artesian Water Company,*** [659 A.2d 1052, 1054 (Pa. Super. 1995)]. The obligor must make a "clear, distinct and unequivocal" acknowledgement of the debt as an existing obligation. ***Id.*** In addition to acknowledging the debt, the obligor must make a promise to pay the debt. ***Id.***

The Court as finder of fact is charged with making determinations of credibility and is permitted to believe all, part or none of the evidence. The Court found neither Stephen Kanya nor Steven Rubin to be credible. Kanya uttered repeated falsehoods and was clearly biased against his former business partner, John Cambridge, who stands to be harmed if the mortgage is foreclosed upon.

The Court found that Kanya failed to unambiguously acknowledge the debt. The estate had no documents demonstrating consistent continuing payments on the debt after the 1990 default. Steven Rubin testified that records relating to the mortgage were destroyed in a fire. Rubin was not credible and the Court did not believe this explanation. Rubin himself had no personal knowledge of the existence of the mortgage at the time of execution or default or for that matter any of the details of the underlying transaction.

[The estate] submitted documents purportedly showing payments from Kanya to Rubin from 2003 and later. However, there were no annual statements and no amortization tables. The Court could not determine what these payments were for and they did not show a promise to pay in accordance with the original mortgage contract.

[The estate] also failed to present the original note and the Court did not believe the explanation that it was lost in the fire. The Court did not accept the legitimacy of the new note which was executed only weeks before the filing of this litigation and long after the expiration of the statute of limitations.

[The estate] asserts the Court was required by law to find the inclusion of the mortgage on Kanya's Amended Plan of Reorganization after his bankruptcy was an acknowledgement of the debt. The Court rejected this argument for two reasons. First, the estate failed to enter the entire bankruptcy record into

evidence, submitting only the plan of reorganization. Second, the decision of the bankruptcy judge was clearly erroneous on its face as the trustee should have realized the statute of limitations had expired. The Court was not required to accept it.

[The estate] further asserts that the course of conduct between the parties shows an oral modification of the terms of the agreement which either shows Kanya acknowledged the debt or default did not occur in 1990. This was a commercial loan. The conduct of the parties made no commercial or economic sense and this argument also fails.

Trial Court Opinion, 10/4/19, at 5-6.

In its brief as Appellant in this Court, the estate failed to provide a Statement of Questions Presented, a Statement of Jurisdiction, a Statement of the Scope and Standard of Review, and a Statement of the Case. Although we do not condone these omissions, no sanction is necessary, because we are able to discern the estate's position through review of the arguments in its brief. The estate argues the following: (1) the statute of limitation does not apply, because it ran from July 1, 2011, the date the bankruptcy court confirmed Kanya's plan, but was tolled by Kanya's partial payments of money owed under the note between July 1, 2011 and 2016; (2) alternatively, neither Kanya nor IBP could raise the statute of limitations because Kanya waived the right to raise the statute in his reorganization plan; and (3) IBP could not raise the statute of limitations as a defense, because IBP was not a bona fide purchaser of the Property, but was instead controlled by Kanya, so Kanya's failure to raise the statute of limitations in his answer to the estate's complaint

precluded IBP from raising it. IBP filed a brief in this Court in response to the estate's brief. Kanya did not file any brief in this Court.

In effect, the estate requests that we reverse the post-trial order denying judgment n.o.v. and enter judgment in its favor. Our standard of review of an order denying judgment n.o.v. is whether, viewing the record in the light most favorable to the verdict winner and granting the benefit of every favorable inference, "there is sufficient competent evidence to support the verdict." **Tillery v. Children's Hosp. of Philadelphia**, 156 A.3d 1233, 1240 (Pa. Super. 2017). Any conflict in the evidence is resolved in the verdict winner's favor. **Id.** Judgment n.o.v. may be granted "only where the movant is entitled to judgment as a matter of law . . . or [where] the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." **Quinby v. Plumsteadville Family Practice, Inc.**, 907 A.2d 1061, 1074 (Pa. 2006). We will disturb a trial court's grant or denial of judgment n.o.v. "only for an abuse of discretion or an error of law." **Id.**

The central question in this appeal is whether the trial court committed an error of law by concluding that the statute of limitations expired in the mid-1990's. We conclude the court erred. The statute began running no earlier than an event of default after July 1, 2011, the date of confirmation of Kanya's reorganization plan.

The proper starting point for our analysis is to study the effect of confirmation of Kanya's bankruptcy plan on this case. We take this step in accordance with the precept that "property interests are created and defined by state law . . . [u]nless some federal interest requires a different result." **Butner v. United States**, 440 U.S. 48, 55 (1979). The "federal interest" that requires our attention is the effect of confirmation of Kanya's plan under federal bankruptcy law, because confirmation materially affects the date that the statute of limitations began running herein on this foreclosure action.

The United States Constitution authorizes Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8, cl. 4. Under this grant of authority, Congress enacted the Bankruptcy Code in 1978, which is codified at Title 11 of the United States Code and which has been amended several times since its enactment. The bankruptcy statute relating to confirmation, 11 U.S.C. § 1141, provides in pertinent part that except in circumstances not relevant here,

> the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a). Under this provision, the confirmation of Kanya's plan was binding on both Kanya (the "debtor") and on the estate (a "creditor").

Kanya's reorganization plan was confirmed in the Eleventh Circuit. "Although a confirmed plan is a judgment rendered by a federal court, the Chapter 11 plan itself is essentially a contract between a debtor and the creditors of the bankruptcy estate." ***In Re Westport Holdings Tampa, Limited Partnership,*** 614 B.R. 918, 921-22 (Bkrtcy. M.D.Fl., Tampa Div. 2020). "For that reason, the Eleventh Circuit follows principles of contract interpretation when interpreting a confirmed plan of reorganization." ***Id.*** at 922. The confirmed plan becomes a binding contract between the debtor and his creditors. ***Id.*** In addition, a bankruptcy court's confirmation order that is final and no longer subject to appeal becomes "res judicata to the parties and those in privity with them." ***Travelers Indemnity Co. v. Bailey***, 557 U.S. 137, 152 (2009). The res judicata effect of a confirmation order bars litigation of claims that were or could have been raised in a prior action. ***In Re FFS Data, Inc.***, 776 F.3d 1299, 1306 (11th Cir. 2015).

Kanya's bankruptcy plan provided that (1) the estate held a mortgage on the Property secured by a lien of $350,000.00, (2) the estate must be paid in accordance with this "contract," and (3) Kanya would pay arrearages of over $35,000.00 to the estate. IBP Exhibits at 203; ***see also*** n.4, ***supra***. The bankruptcy court's confirmation of this plan made these terms a binding contract between Kanya and Rubin's estate. ***Westport Holdings***, 614 B.R. at 921-22.

The trial court declined to find that the bankruptcy court's confirmation of Kanya's reorganization plan created a binding contract between Kanya and the estate, reasoning that (1) the estate "failed to enter the entire bankruptcy record into evidence, submitting only the plan of reorganization," and (2) "the decision of the bankruptcy judge was clearly erroneous on its face . . ." Trial Court Opinion at 6. We find both of these rationales faulty. The estate's "failure" to enter the entire bankruptcy record into evidence is of no moment in light of the fact that the confirmed plan, or the contract itself, was introduced into evidence. The confirmation of the plan was a fact the court could have taken judicial notice of from Kanya's bankruptcy docket. *See* n.5, *supra*. More importantly, the court was not free to disregard the bankruptcy court's confirmation as erroneous, because the confirmation order was entitled to full faith and credit, and the plan established and acknowledged that a "contract" existed between Kanya and the estate that was binding under the doctrine of res judicata. *Travelers Indemnity Co.*, 557 U.S. at 152; *see also Holz v. Holz*, 850 A.2d 751, 757-58 (Pa. Super. 2004) (federal district court judgment in wife's declaratory judgment action that her waiver of pension rights in property settlement agreement was void under Employee Retirement Income Security Act was binding on state court in divorce proceeding under doctrine of res judicata, where federal district court was court of competent jurisdiction and its final judgment on merits was entitled

- 12 -

to full faith and credit, and same parties appeared in state and federal court actions).

The confirmation of Kanya's bankruptcy plan renders erroneous the trial court's determination that Kanya defaulted on his loan in 1990 and that the four-year statute of limitations expired in 1994. Regardless of whether Kanya defaulted on his debt in 1990, the fact remains that the Bankruptcy Court's confirmation of Kanya's reorganization plan created a binding contract between Kanya and the estate as of the date of confirmation, July 1, 2011. **Westport Holdings,** 614 B.R. at 921-22. Consequently, any breach of this agreement had to have taken place after July 1, 2011, so the statute of limitations on the estate's foreclosure action had to have begun running after July 1, 2011 as well.

Having determined that the statute of limitations expired in the mid-1990's when it did not begin running until after July 1, 2011, we turn to the next question, whether the statute expired prior to commencement of this action. Unfortunately, we cannot answer this question due to several unresolved questions of fact. For instance, we cannot ascertain the date(s) after July 1, 2011 when or if Kanya failed to make mortgage payment(s) to the estate under the "contract", thus causing an event of default and the commencement of the statute of limitation period. **See Bank of Am., N.A. v. Gibson**, 102 A.3d 462, 464 (Pa. Super. 2014) (right to bring foreclosure action accrues upon default by mortgagor). Nor can we tell whether the

statute may have been tolled after July 1, 2011 by some principle of law such as a forbearance, a promise to pay the debt, or part payment of the debt. *See Crispo v. Crispo*, 909 A.2d 308, 313 (Pa. Super. 2006) ("clear, distinct and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute"); *Cole v. Lawrence*, 701 A.2d 987, 990 (Pa. Super. 1997) ("there can be no more clear and unequivocal acknowledgement of a debt than payment"). Since fact questions remain as to when or if a default occurred after July 1, 2011, and thus whether or when the statute of limitations began to run, the proper remedy is to remand this case for a new trial.

We recognize that it is somewhat unusual to remand for a new trial when, as here, the only relief requested in this Court is judgment n.o.v. Nevertheless, some precedent exists for this remedy. In *McGuire v. Schneider, Inc.*, 534 A.2d 115 (Pa. Super. 1987), the parties disputed whether the discharge of an employee constituted a breach of his employment agreement. The jury entered a verdict in favor of an employee, and following the denial of the employer's posts-trial motions, the employer argued in this Court that it was entitled to judgment n.o.v. Although we held that the trial court committed an error of law by instructing the jury to apply the wrong legal standard, we declined the employer's request for judgment n.o.v. and ordered a new trial instead, reasoning, "[O]n the record of this case we cannot say that at a new trial [the employee] will be unable to prove that his

discharge was improper under the [employment] agreement." ***Id.***, 534 A.2d at 120. We believe that a similar remedy is appropriate here. Although the trial court committed legal error in determining that the statute of limitations expired in the mid-1990's, we cannot say that in a new trial, IBP will be unable to prove that the statute of limitations expired at some point after July 1, 2011. Accordingly, a new trial is the proper remedy instead of judgment n.o.v. in favor of the estate.

Ordinarily, the grant of a new trial "means a new trial generally; it restores a case to the status it had before the trial took place and is fully open to be tried *de novo* as to all parties and all issues." ***Rivera v. Philadelphia Theological Seminary of Saint Charles Borromeo, Inc.***, 507 A.2d 1, 11 (Pa. 1986). In this case, however, trial *de novo* is not permissible on several issues because of the res judicata effect of the confirmation of Kanya's bankruptcy plan. Confirmation of the plan requires the trial court to find, without trial *de novo*, that a contract existed between Kanya and Rubin's estate as of July 1, 2011, the date of plan confirmation, for Kanya to pay a mortgage of $350,000.00 as well as arrearages of $35,463.00 in equal monthly payments of $1,000.00. ***Westport Holdings***, 614 B.R. at 921-22; ***Travelers Indemnity Co.***, 557 U.S. at 152.

All other issues are subject to litigation *de novo*. Among those that we anticipate may be raised are (1) material terms of the "contract", if any, not specifically addressed in the confirmation order (*e.g.*, the interest rate) or (2)

material terms of the lost note, if any, not already reflected in the mortgage.

*See* 13 Pa.C.S.A. § 3309 ("Enforcement of Lost, Destroyed or Stolen Instrument").[6]

Assuming IBP raises the affirmative defense of the statute of limitations, it will bear the burden of proof on this issue. Pa.R.C.P. 1030 (listing statute

_____

[6] Section 3309 provides:

**(a) Enforcement.--**A person not in possession of an instrument is entitled to enforce the instrument if:

(1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred;

(2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and

(3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

**(b) Proof.--**A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, [13 Pa.C.S.A. §] 3308 (relating to proof of signatures and status as holder in due course) applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

*Id.*

of limitations as affirmative defense). The estate may respond to this defense with evidence such as whether the statute was tolled by a promise to pay the debt or part payment of the debt. Pennsylvania's statute of limitation is the governing law, even though some of the conduct pertaining to this case, such as Kanya's bankruptcy, took place in Florida. The Uniform Statute of Limitations on Foreign Claims Act ("USLFCA"), 42 Pa.C.S.A. § 5521, provides in relevant part:

> **(b) General rule.--**The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.

> **(c) Definition.--**As used in this section "claim" means any right of action which may be asserted in a civil action or proceeding and includes, but is not limited to, a right of action created by statute.

*Id.* Assuming the estate's "claim" arose in Florida due to the confirmation of Kanya's bankruptcy plan in Florida or some other consideration, the USLFCA requires application of Pennsylvania's four-year statute, because the statute of limitations for foreclosure actions when the mortgage is not under seal is four years in Pennsylvania and five years in Florida. *Compare* 42 Pa.C.S.A. § 5525(a)(7) (Pennsylvania) *with* F.S.A. § 95.11(2)(c) (Florida). The same result occurs by comparing Pennsylvania's statute for contract actions, 42 Pa.C.S.A. § 5525 (four years), with Florida's statute for contract actions, F.S.A. § 95.11(2)(b) (five years).

We further observe that IBP, as transferee of the quitclaim deed to the Property, stands in the shoes of the transferor, Kanya, on remand. *Levitt v.*

*Patrick*, 976 A.2d 581, 591 (Pa. Super. 2009) (when property subject to mortgage is transferred without payment of mortgage, property in hands of transferee continues to be security for performance of obligation, and for any default the mortgagee may seize and sell the property in hands of transferee).

IBP claims in its appellate brief that the mortgage on the Property already has been satisfied. We leave this issue for the trial court to determine on remand whether both the mortgage of $350,000.00 and the arrears of $35,463.00 have been fully paid.

We briefly address two other arguments in the estate's appellate brief. The estate claims that Kanya and IBP are precluded from raising the statute of limitations either because of the bankruptcy court's confirmation of Kanya's reorganization plan or because of Kanya's failure to raise the statute of limitations in his answer to the amended complaint. Neither argument has merit. First, Kanya's reorganization plan only precludes defenses that were or could have been raised at or before the confirmation of the plan. *FFS Data*, 776 F.3d at 1306. Implicit in this principle is that confirmation does not preclude **post-**confirmation defenses. Here, the statute of limitations could not have begun to run earlier than the date of plan confirmation, thus rendering the statute of limitations a post-confirmation defense. Second, we reject the estate's argument that, since Kanya failed to raise the statute of limitations as an affirmative defense in his answer to the estate's complaint, IBP, whom the estate suggests is Kanya's alter ego, could not raise it either.

We do not know of any rule, nor does the estate cite any, that prevents one defendant from raising affirmative defenses that another defendant fails to raise. Further, the evidence does not support IBP as an alter ego of Kanya. While Kanya at some point owned seventy percent of IBP and was chairman of the board, he no longer is an owner of IBP or of the real property in question. IBP was represented by its own counsel during trial, presented its own evidence, filed its own pleadings and motions, and is a separate legal entity. Moreover, as the trial court observed, Kanya and IBP are on antagonistic terms.[7]

We vacate the judgment entered in favor of Kanya and IBP and remand for further proceedings consistent with our instructions in this memorandum.

Judgment vacated. Case remanded for new trial in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/2022

---

[7] It is not clear to us how the estate may pursue a foreclosure action against Kanya, the only action alleged in the amended complaint, since Kanya transferred the Property to IBP. "Mortgage foreclosure in Pennsylvania is strictly an in rem or 'de terris' proceeding." *Nicholas v. Hoffman*, 158 A.3d 675, 697 (Pa. Super. 2017).