J-A26021-24

2025 PA Super 10

| IRISH HOLDINGS LLC | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY | : | |
| | : | |
| Appellant | : | No. 451 WDA 2024 |

Appeal from the Order Dated August 1, 2023
In the Court of Common Pleas of Greene County
Civil Division at AD-795-2022

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:                    **FILED: January 16, 2025**

EQT Production Company (Appellant) appeals from the trial court's interlocutory order denying Appellant's motion for recusal.  As explained below, we granted Appellant's request for permission to appeal pursuant to 42 Pa.C.S. § 702(b).  After careful consideration, and for the following reasons, we reverse the order denying recusal and remand with instructions.

*FACTUAL AND PROCEDURAL HISTORY*

1. *Trial Court Action*

This case involves oil and gas drilling in Greene County.  On March 28, 2023, Appellee Irish Holdings LLC (Irish Holdings) sued Appellant for trespass and conversion.[1]  Irish Holdings is a limited liability company "organized and

---

[1] Trespass is the "intentional entrance upon land in the possession of another without a privilege to do so."  **Kennedy v. Consol Energy Inc.**, 116 A.3d
*(Footnote Continued Next Page)*

existing under the laws of the State of Texas." Complaint, 3/28/23, at 2. Appellant is a corporation "organized and existing under the laws of the Commonwealth of Pennsylvania."[2] *Id.*

Irish Holdings owns an oil and gas estate on "an approximately 97 acre parcel in Washington Township, Greene County." *Id.* Irish Holdings claims that in the course of Appellant's "oil and gas development in the vicinity of the parcel," Appellant "physically intrude[d] and entere[d] upon [Irish Holdings'] oil and gas estate." *Id.* at 5. Irish Holdings identifies three wells Appellant operates on nearby property. *Id.* at 11. Irish Holdings asserts that "[t]hrough the perforation and stimulation" of these wells, Appellant entered Irish Holdings' oil and gas estate, where Appellant "severs and removes oil, gas and other hydrocarbons … which [Appellant] sells after they reach the surface." *Id.* at 13. Thus, Irish Holdings seeks damages for being deprived of "the ability to sever, produce and sell oil, gas and other hydrocarbons from [its oil and gas estate], and to receive the proceeds thereof." *Id.* at 14.

---

626, 636 (Pa. Super. 2015) (citations omitted). Conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Id.* at 637.

[2] According to Appellant, it "owns or leases more than 1,000,000 net acres in Pennsylvania. Most of the acreage is located in the southwestern region of the state, with the majority located in Greene and Washington Counties. [Appellant] is actively developing the Marcellus Shale in this area." *EQT, Operational Footprint, Pennsylvania*, https://www.eqt.com/operations/production/ (last visited Jan. 6, 2025).

Appellant filed preliminary objections to the complaint on April 14, 2023, "[b]efore the case was assigned to any trial judge." Appellant's Brief at 10. The case was subsequently assigned to Greene County Court of Common Pleas Judge Jeffry N. Grimes. Notably, Appellant had sought Judge Grimes' recusal several months prior, when it filed an application for extraordinary relief with the Pennsylvania Supreme Court. *See In re: Disqualification of Judge Jeffry N. Grimes*, No. 46 WM 2022 (Pa. filed Nov. 14, 2022).

2. *Application for Extraordinary Relief*

On November 14, 2022, Appellant filed an application for extraordinary relief asking the Pennsylvania Supreme Court to exercise King's Bench jurisdiction.[3] Appellant stated it was a "party in more than 30 active cases before the Greene County Court of Common Pleas," and "Judge Grimes is hearing nearly all cases involving [Appellant]—including those that are currently pending." Application for Extraordinary Relief, 11/14/22, at 7-8. Appellant requested the Supreme Court,

> order that Judge Jeffry N. Grimes be disqualified from presiding over or hearing **any matter** in the Court of Common Pleas of Greene County involving [Appellant] or any of its affiliates or subsidiaries. [Appellant] also respectfully request[ed] that th[e] Court exercise its authority over judicial administration under Article V, § 10 of the Pennsylvania Constitution and 42 Pa. C.S. § 726 to temporarily assign a judge to Greene County to hear any

---

[3] The Supreme Court exercises King's Bench authority with extreme caution. *In re Domitrovich*, 257 A.3d 702, 715 (Pa. 2021) (citation omitted). Such authority "is generally invoked to review an issue of public importance that requires timely intervention by the court of last resort to avoid the deleterious effects arising from delays incident to the ordinary process of law." *Id.*

cases in which Judge Grimes and/or [the one other Greene County judge,] President Judge [Louis] Dayich[,] have been disqualified.

*Id.* at 29-30 (bold emphasis added).

On November 28, 2022, parties in six of the pending Greene County cases involving Appellant filed six separate applications for intervention.[4]

On May 11, 2023, the Pennsylvania Supreme Court issued a *per curiam* order stating:

> **AND NOW**, this 11th day of May, 2023, the Application for Extraordinary Relief is DENIED, and the Applications for Intervention are DISMISSED AS MOOT.
>
> Justice Brobson notes his dissent.

Order, 5/11/23.

3. *Motion to Recuse*

Approximately two months later, Appellant filed a motion in the trial court asking Judge Grimes to recuse (Recusal Motion) from the underlying trespass and conversion action. Appellant averred:

1. Judge Grimes' recusal is required in this case because a rational observer familiar with the extensive and ongoing relationship between [Appellant], Judge Grimes, and his close family members, including Judge Grimes' interest in the three wells put at issue in this case, would reasonably question Judge Grimes' ability to preside impartially over these proceedings.

2. Judge Grimes and his family currently have 17 leases with [Appellant] that encumber approximately 50 parcels of land located in Greene County and are connected to over 30

---

[4] All of the parties were represented by the law firm that represents Irish Holdings in this appeal.

different wells and numerous drilling units, all of which are operated by [Appellant]. [Appellant] has now paid Judge Grimes and his family a total of over $5 million in bonus and royalty payments, and [Appellant] continues to regularly pay them substantial monthly royalties. The relationship between [Appellant] and Judge Grimes and his family is far more encompassing than the relationship between [Appellant] and former [Greene County] Judge [Farley] Toothman, who regularly recused himself from [Appellant] matters.

3. Of these 17 leases, Judge Grimes was involved in executing three of them, encumbering approximately 343.88 acres of land located in Greene County. These leases continue to generate substantial payments to Judge Grimes and have also given rise to claims and litigation between him and [Appellant]. Judge Grimes has extensively communicated to [Appellant] on his own behalf and on behalf of his family members regarding their leases for years. He has continued to do so since taking the bench [on January 3, 2022,] (including through formal demands for payment under these leases)[,] and will likely continue to do so as his and his family's business relationship with [Appellant] continues. Based on these facts, a rational observer could reasonably question Judge Grimes' impartiality in matters involving [Appellant].

Recusal Motion, 7/24/23, at 1-2 (footnotes omitted).

Appellant stated that its communications with Judge Grimes "occurred before and after he took the bench." *Id.* at 4. Appellant attached a copy of a "demand for payment" Judge Grimes emailed to Appellant on January 23, 2022. *Id.* (referencing email as Exhibit A). Appellant also attached a demand letter Judge Grimes sent to Appellant on December 10, 2018, before he was a judge.[5] *Id.* at 12 (referencing letter as Exhibit B). Appellant reiterated that

---

[5] Judge Grimes was elected to the bench on November 2, 2021, and his 10-year term began on January 3, 2022.

Judge Grimes has an ownership interest in the three wells at issue in the parties' dispute, and stated that Judge Grimes "may be directly impacted by the outcome of this litigation." *Id.* at 5.

In addition, Appellant cited case law, due process provisions, the Pennsylvania Code of Judicial Conduct, and formal advisory opinions in support of recusal. *Id.* at 9-12. Appellant also offered to provide additional supporting exhibits and testimony at an evidentiary hearing. *Id.* at 12.

Irish Holdings did not file a response or take a position on the Recusal Motion. Appellant presented oral argument, after which Judge Grimes denied relief. Using a pen, Judge Grimes crossed through the body of Appellant's proposed order, and signed his name with the handwritten notation, "Denied, 8-1-23." Order, 8/2/23.[6]

On August 29, 2023, Appellant filed an application to amend the order. Appellant asked Judge Grimes to include a statement pursuant to 42 Pa.C.S. § 702(b).[7] Again, Irish Holdings did not file a response or take a position.

_____

[6] The order was entered on the docket the following day, August 2, 2023.

[7] The Rule provides that an appellate court may permit an appeal from an interlocutory order when a trial court,

> in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially

*(Footnote Continued Next Page)*

After hearing Appellant's oral argument, Judge Grimes entered an order

stating:

> The [c]ourt hereby amends its August 1, 2023, Order in the above-captioned case to include the following additional sentence:
>
> The [c]ourt is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the matter.

Order, 9/7/24.

### 4. *Appeal to Superior Court*

On October 6, 2023, Appellant petitioned this Court for permission to

appeal. ***Irish Holdings LLC v. EQT Production Company***, No. 74 WDM

2023 (Pa. Super. filed Oct. 6, 2023).

> Appellant reiterated:
>
> The Honorable Jeffry N. Grimes of the Greene County Court of Common Pleas and his family are parties to 17 oil and gas leases with [Appellant]. These leases encumber approximately 50 parcels of land in Greene County and are connected to 30 different wells and numerous drilling units operated by [Appellant]. Judge Grimes himself is a party to three of these leases, and he negotiated on behalf of his family members with respect to several others. Over the years, [Appellant] has paid Judge Grimes and his family more than $5 million in bonus and royalty payments pursuant to the leases, and the leases will continue to generate substantial monthly payments to Judge Grimes and his family.
>
> Yet, Judge Grimes has been assigned to preside over this lawsuit alleging trespass and conversion claims against [Appellant] for its

---

> advance the ultimate termination of the matter, it shall so state in such order.

42 Pa.C.S. § 702(b).

oil and gas production from wells associated with Judge Grimes'[] leases.

Petition for Permission to Appeal, 10/6/23, at 1-2.

In addition, Appellant emphasized:

[Appellant] moved for Judge Grimes'[] recusal because an appearance of impropriety exists given that Judge Grimes and his family have extensive, ongoing business relationships with [Appellant] and because, in adjudicating cases involving [Appellant], Judge Grimes will be called upon to address the kinds of issues that typically arise in oil and gas disputes and thus could affect his and his family's interests. In this case, moreover, the circumstances are particularly acute because the outcome of this case could directly impact the royalty payments made to Judge Grimes on wells connected to his leases with [Appellant].

*Id.* at 2.[8]

On April 18, 2024, this Court entered a *per curiam* order granting Appellant permission to appeal. On May 7, 2024, Judge Grimes ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). The next day, Judge Grimes advised this Court that the recusal "matter was decided, and an Order [was] entered with no hearing being held. Therefore, there is no transcript as no testimony was offered." Letter, 5/8/24.

On May 24, 2024, Appellant filed a concise statement of errors complained of on appeal (Concise Statement). Appellant raised the following issues:

1. Whether, under Pennsylvania law, a trial judge should be disqualified from presiding over a case where (1) the judge and

---

[8] Irish Holdings informed this Court it would "not be filing any answer" to Appellant's petition. Letter in Lieu of Answer, 10/24/23.

his family have substantial and ongoing business relationships with one of the litigants, (2) the judge will be called upon to address legal issues that could impact him and his family in future disputes with the litigant, and (3) the judge will be directly impacted by the outcome of the litigation, each of which independently creates an appearance of impropriety?

2. Whether, under the Due Process Clause, a trial judge should be disqualified from presiding over a case where (1) the judge and his family have substantial and ongoing business relationships with one of the litigants, (2) the judge will be called upon to address legal issues that could impact him and his family in future disputes with the litigant, and (3) the judge will be directly impacted by the outcome of the litigation, each of which independently creates an appearance of impropriety?

Concise Statement, 5/24/24, at 2.

Appellant also filed an unopposed motion to stay the trial court proceedings pending appeal. Judge Grimes entered an order granting the request and staying proceedings on June 20, 2024.

On July 12, 2024, Judge Grimes issued a *de facto* trial court opinion indicating he had changed his mind. **See** Order (TCO), 7/12/24, at 1-3.[9] Judge Grimes stated that after considering the record, he "is now convinced" of the error, "which requires correction." **Id.** at 1. He reasoned:

[T]his [c]ourt is of the opinion that its error was limited to only a portion of [Appellant's] cited errors. In its Concise Statement, [Appellant] avers that this [c]ourt erred by failing to recuse where (1) there is a substantial and ongoing business relationship with a litigant, (2) the judge will be called upon to address legal issues that could impact him and his family in future disputes with the

_____

[9] The opinion is titled "ORDER." Like this Court, Appellant and Irish Holdings consider it to be the trial court opinion. **See** Appellant's Brief at 11 n.5; Irish Holdings' Brief at 1.

litigant, and (3) the judge will be directly impacted by the outcome of the litigation. **See** Concise Statement at 2.

> In a small, two judge county such as Greene, the absence of familiarity is rare. Greene County is also one of the top producers of oil and gas in the Commonwealth, which results in a multitude of cases; a party in a substantial majority of those cases being [Appellant]. In the instant matter, the undersigned owns a small interest in the oil and gas estate underlying a portion of the Oil and Gas Production Units in question which could be impacted, however slight. It is this direct ownership, not any unrelated ownership interests or business relationship, which could create the appearance of impropriety. The instant [c]ourt has determined that, based on the undersigned's ownership in a property directly impacted by the above number and term, it has acted in error. The [c]ourt had previously granted recusal motions by [Appellant] in other cases in which there was an interest in the properties directly impacted, but failed to do so in this case. This [c]ourt recognizes that this is not binding,[10] but provides this information to the Superior Court to use in any manner deemed appropriate.

**Id.** at 1-3.

## ISSUES

On appeal, Appellant presents the same issues raised in its concise statement:

> I. Whether, under Pennsylvania law, a trial judge should be disqualified from presiding over a case where (1) the judge and his family have substantial and ongoing business relationships with one of the litigants, (2) the judge will be called upon to address legal issues that could impact him and his family in future disputes with the litigant, and (3) the judge will be directly

---

[10] Appellant emphasizes that Judge Grimes' opinion "is only advisory and until this Court speaks on the matter, [Judge Grimes'] order not to recuse controls." Appellant's Brief at 11 n.5.

impacted by the outcome of the litigation, each of which independently creates an appearance of impropriety?

II. Whether, under the Due Process Clause, a trial judge should be disqualified from presiding over a case where (1) the judge and his family have substantial and ongoing business relationships with one of the litigants, (2) the judge will be called upon to address legal issues that could impact him and his family in future disputes with the litigant, and (3) the judge will be directly impacted by the outcome of the litigation, each of which independently creates an appearance of impropriety?

Appellant's Brief at 6.

### *ARGUMENTS*

Appellant argues that "controlling law and on-point persuasive authority overwhelmingly support recusal in this case." *Id.* at 41. Appellant cites state and federal authority in arguing that Judge Grimes' recusal is required under Pennsylvania law and the Due Process Clause of the United States Constitution. *See id.* at 27-33. Appellant also cites the Pennsylvania Code of Judicial Conduct, recognizing that "the Code does not vest litigants with rights, but imposes standards of conduct on the judiciary and serves as a reference in a judge's assessment of whether to recuse." *Id.* at 33 (citing *Reilly by Reilly v. SEPTA*, 489 A.2d 1291, 1298 (Pa. 1985)).

Appellant summarizes its position as follows:

Judge Grimes'[] involvement in this case creates an appearance of impropriety, which unlawfully and unconstitutionally compromises the integrity of the Commonwealth's judicial system, for three equally important reasons. First, Judge Grimes has an ongoing business relationship with a litigant, [Appellant], that has paid him and his family millions of dollars pursuant to oil and gas leases. Second, Judge Grimes will be called upon to interpret oil and gas leases and address the rights of leaseholders who are

- 11 -

similarly situated to him and his family members, placing him in the compromising position of making legal rulings that could directly benefit his and his family's own legal standing. Third, Judge Grimes'[] own interests are specifically implicated in this very case, as Judge Grimes, pursuant to his leases with [Appellant], receives royalty payments based on gas produced from each of the three wells that are at issue in this litigation.

For each of these independent reasons, whether Judge Grimes should recuse from hearing cases involving [Appellant] is not a close call. Under controlling law, and to maintain the integrity of the judicial process, he must recuse. Pennsylvania courts, as well as state and federal courts across the country, have held that recusal is required when a judge or a judge's family member has an ongoing business relationship with a litigant, or when a judge may be called upon to address issues that could impact him or her in the future, or when a judge's own interests are specifically at issue in the case. So it should be here as well. This Court, accordingly, should reverse and hold that each of these circumstances independently mandate recusal.

*Id.* at 13-14.

Irish Holdings agrees recusal is "proper based on [Judge Grimes'] ownership of some oil and gas property located in production units at-issue in this case." Irish Holdings' Brief at 1 (citation to TCO omitted). Irish Holdings advocates for remand of the order denying recusal, "back to the Court of Common Pleas of Greene County, Pennsylvania for it to be amended by The Honorable Judge Grimes to *grant* recusal based on the reason set forth in the 1925(a) Opinion." *Id.* at 2 (italics in original). Irish Holdings emphasizes this Court's deferential standard of review. *Id.* at 3. In addition, Irish Holdings asserts "there is no reason for this Honorable Court to proceed further into other recusal questions" or "take on a review that the Pennsylvania Supreme

Court has recently declined." *Id.* at 2, 7 (citing the Supreme Court's May 11, 2023 Order declining to exercise King's Bench jurisdiction).

In response, Appellant clarifies it "is not asking this Court to issue a directive or mandate that recusal is required in all of the 25 cases involving [Appellant] before Judge Grimes in which [Appellant] moved for recusal." Appellant's Reply Brief at 6. Appellant also submits that the Supreme Court's order declining to exercise King's Bench jurisdiction is not dispositive of this appeal, and "whether this Court may or should decide the issues presented." *Id.* at 7. Appellant states:

> [Irish Holdings] misunderstands the import of a denial of a King's Bench petition—a form of extraordinary relief not regularly granted, even in particularly compelling circumstances. The Pennsylvania Supreme Court's decision not to grant [Appellant's] King's Bench petition does not amount to an endorsement of Judge Grimes'[] decision not to recuse, nor does it constitute any sort of implied ruling on the merits. Instead, it reflects only the Supreme Court's election not to bypass an intermediate appellate court ruling on the matter. *See, e.g.*, *Siekierda v. Com., Dep't of Transp.*, 860 A.2d 76, 84 n.10 (Pa. 2004) ("This Court's denial of a request for discretionary review suggests no position on the merits…[.]"). In other words, while one Supreme Court Justice, Justice Brobson, thought Judge Grimes'[] recusal rulings were of such importance as to necessitate immediate resolution by the High Court, the denial of the King's Bench petition only signals that a majority of the Justices expect and are counting on this Court to weigh in on the issue and decide it in the first instance.

*Id.* at 7-8.

Appellant recognizes that this Court's resolution of legal issues is precedential and "will have bearing on other cases." *Id.* at 6. Appellant asks us to "fully resolve the recusal controversy and hold that **each** basis asserted

in [Appellant's] recusal petition requires recusal." ***Id.*** at 5 (emphasis in original).

*LEGAL AUTHORITY*

1. *Pennsylvania Law and Due Process*

This Court reviews the denial of a recusal motion for an abuse of discretion. ***Lomas v. Kravitz***, 130 A.3d 107, 122 (Pa. Super. 2015) (*en banc*), ***aff'd***, 170 A.3d 380 (Pa. 2017); ***In re Bridgeport Fire Litig.***, 5 A.3d 1250, 1254 (Pa. Super. 2010). We have explained:

> A party seeking recusal of a judge must provide evidence of the necessity for a disqualification. Generally, recusal is warranted where the appearance of impropriety arises because of a judge's pecuniary interest in a controversy or because of a consanguineal relationship between the judge and one of the litigants.

***Corrado v. Thomas Jefferson Univ. Hosp.***, 790 A.2d 1022, 1034 (Pa. Super. 2001) (citations omitted).

In Pennsylvania, a trial judge should recuse whenever he has any doubt as to his ability to preside impartially or whenever he believes his impartiality can be reasonably questioned. ***In re Bridgeport Fire Litig.***, ***supra***. Case law "instructs that actual bias need not be shown in a case where a decision-maker rules on a matter in which he or she has a personal interest." ***Pascal v. City of Pittsburgh Zoning Bd. of Adjustment***, 259 A.3d 375, 384 (Pa. 2021). This Court has stated:

> A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. Thus, in order for the integrity of the judiciary to be [un]compromised, we have held that a judge's

- 14 -

behavior is not required to rise to a level of actual prejudice, but the appearance of impropriety is sufficient. In this regard, the appearance of impropriety sufficient to disqualify a judge exists when a significant minority of the lay community could reasonably question the court's impartiality.

*Commonwealth v. Dip*, 221 A.3d 201, 206–07 (Pa. Super. 2019) (cleaned up).

Whether a due process violation has occurred raises a question of law for which this Court's standard of review is *de novo* and scope of review is plenary. *Pascal*, 259 A.3d at 382. The United States Supreme Court has held that "the Constitution does not reach every issue of judicial qualification, [but] 'it certainly violates the Fourteenth Amendment ... to subject [a person's] liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial, pecuniary interest.'" *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986) (quoting *Tumey v. Ohio,* 273 U.S. 510, 523 (1927)). Applying *Aetna,* the Pennsylvania Supreme Court held that the "Fourteenth Amendment Due Process provision is offended where a jurist participates in a matter where he has a *direct, personal, substantial, pecuniary* interest." *Goodheart v. Casey*, 565 A.2d 757, 761 (Pa. 1989) (italics in original).

More recently, the Pennsylvania Supreme Court addressed recusal in a quasi-judicial administrative proceeding, where a member of the Pittsburgh Zoning Board of Adjustment voted to grant requests for variances and exceptions "brought by an organization on whose board she sat." *Pascal*, 259 A.3d at 385. Our Supreme Court reiterated that "no man can be a judge

- 15 -

in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.* at 381-82 (citations omitted). The Court explained:

> [W]hether or not [the board member] was actually biased in favor of the successful zoning applicant is not dispositive here. Indeed, [the board member's] participation in ruling on the propriety of zoning applications brought by an organization on whose board she sat at all relevant times so clearly and obviously endangered the appearance of neutrality that her recusal was required under well-settled due process principles that disallow a person to be the judge of his or her own case or to try a matter in which he or she has an interest in the outcome.

*Id.* at 385.

> In his concurrence on this issue, Justice Wecht observed:
>
> One of the central tenets of our legal system is the right to a fair tribunal, without which the pursuit of all other rights would be a pantomime of justice. All the procedural and evidentiary safeguards of a fair trial mean nothing if the outcome is a *fait accompli* or irremediably tainted by some bias or prejudgment on the part of the decision-maker.
>
> ***
>
> Notwithstanding the many forms due process can take, one of the hallmarks of procedural due process is a fair trial in a fair tribunal. … The mechanism that ensures a fair tribunal is the recusal of a conflicted decision-maker. After all, it is axiomatic that no man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity. However, most matters relating to judicial disqualification do not rise to a constitutional level.
>
> On one hand, the Due Process Clause encompasses the common-law rule that a decision-maker must recuse h[im]self when []he has a direct pecuniary interest in a case. Over the last century, however, the Supreme Court of the United States has gradually expanded the grounds for recusal far beyond what the common law required.

*Id.* at 389-90 (Wecht, J., concurring in part) (footnotes and quotation marks omitted).[11]

   2. *The Judicial Conduct Code*

Appellant references the Judicial Conduct Code, which "does not have the force of substantive law, but imposes standards of conduct upon the judiciary to be referred to by a judge in his self-assessment of whether he should volunteer to recuse from a matter pending before him."  Appellant's Brief at 33 (citations omitted).  The Pennsylvania Supreme Court recently stated:

> The Code is intended to impose standards of conduct upon the judiciary to be referred to by a judge in his self-assessment of whether he should volunteer to recuse from a matter pending before him.  The Code establishes norms pursuant to which judges are expected to conduct themselves, but it does not impose substantive legal duties on them.

*In re Prospect Crozer LLC*, --- A.3d ---- (Pa. 2024), No. 37 MAP 2023, 2024 WL 5132101, at *17 (Pa. Dec. 17, 2024) (citations, quotation marks and brackets omitted).

This Court is without jurisdiction to enforce the mandate that a jurist disqualify himself *sua sponte.*  **See 2303 Bainbridge, LLC v. Steel River Bldg. Sys., Inc.**, 239 A.3d 1107, 1118 (Pa. Super. 2020) (explaining an appellant may not rely on the Judicial Conduct Code to support recusal because enforcement of the Code is beyond this Court's jurisdiction).

---

[11] Justices Todd and Donohue joined Justice Wecht.  Justice Todd was subsequently installed as Chief Justice on January 20, 2023.

Nonetheless, we have recognized the Code's mandate that "a judge shall recuse … from a proceeding in which the judge's impartiality might reasonably be questioned." *See, e.g.*, *Hvizdak v. Linn*, 190 A.3d 1213, 1223 (Pa. Super. 2018) (citing Pa. Code of Judicial Conduct Rule 2.11).

Rule 2.11 includes the following mandate:

(A) A judge shall disqualify himself … in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

(2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the third degree of relationship to either of them, or the spouse or domestic partner of such a person is:

…

    (c) a person who has more than a de minimis interest that could be substantially affected by the proceeding; or

…

(3) The judge knows that he … individually or as a fiduciary, or the judge's spouse, domestic partner, parent, or child, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or is a party to the proceeding.

Pa. Code of Jud. Conduct Rule 2.11.

The "judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." *Id.* at cmt 2. Further:

Avoiding the appearance of impropriety under Canon 2 to Pennsylvania's Code is mandatory. This prohibition is further reinforced under Rule 1.2 and Comment 5 to Rule 1.2, which provides a judge "shall avoid impropriety and the appearance of impropriety." Pa. Code Jud. Conduct, Canon 1, Rule 1.2, cmt. 5. Accordingly, there can be no doubt, in light of this history, and the current status of our Code of Judicial Conduct, that avoiding "impropriety" and the "appearance of impropriety" is not only important, but also mandatory in Pennsylvania.

*Lomas*, 130 A.3d at 135 (Stabile, J., dissenting).

In addition, Rule 3.1 addresses extrajudicial activities "in general," while Rule 3.11 addresses financial activities. A judge "shall not engage in financial activities" if they will:

(1) interfere with the proper performance of judicial duties;

(2) lead to frequent disqualification of the judge;

(3) involve the judge in frequent transactions or continuing business relationships with lawyers or other persons likely to come before the court on which the judge serves; or

(4) result in violation of other provisions of this Code.

Pa. Code of Jud. Conduct 3.11(C).

## *DISCUSSION*

Appellant seeks Judge Grimes' recusal for the following reasons:

(1) the judge and his family have substantial and ongoing business relationships with one of the litigants;

(2) the judge will be called upon to address legal issues that could impact him and his family in future disputes with the litigant; and

(3) the judge will be directly impacted by the outcome of the litigation, each of which independently creates an appearance of impropriety.

*See* Recusal Motion at 1-5; Concise Statement at 2; and Appellant's Brief at 6. Appellant describes the above reasons as independent and equally dispositive. Appellant's Brief at 14. Appellant claims "any one of these three grounds requires recusal under both Pennsylvania and federal constitutional law." *Id.*

We agree that Pennsylvania law and due process compel recusal in this case. Judge Grimes admits he "owns a small interest in the oil and gas estate underlying a portion of the Oil and Gas Production Units in question, which could be impacted, however slight." TCO at 2. This personal and pecuniary interest in property at the crux of the parties' trespass and conversion dispute creates the appearance of impropriety. Judge Grimes' "participation in ruling … so clearly and obviously endanger[s] the appearance of neutrality that h[is] recusal [i]s required under well-settled due process principles." *Pascal*, 259 A.3d at 385. The appearance of impropriety alone is enough to warrant recusal. *Lomas*, 130 A.3d at 122. Moreover, "a decision-maker must recuse" when he "has a direct pecuniary interest in a case." *Pascal*, 259 A.3d at 390.

1. *Judge Grimes' Business Relationship with Appellant*

There is nothing in the record contradicting Appellant's account of Judge Grimes' ongoing business relationship with Appellant. Throughout its pleadings, Appellant has averred:

> Judge Grimes of the Court of Common Pleas of Greene County and his family are parties to 17 oil and gas leases with [Appellant], a litigant in this case. These leases encumber approximately 50 parcels of land in Greene County and are connected to 30 different

wells and numerous drilling units operated by [Appellant]. Judge Grimes himself is a party to three leases, and he negotiated on behalf of his family members with respect to several others. Over the years, [Appellant] has paid Judge Grimes and his family more than $5 million in bonus and royalty payments pursuant to the leases, which continue to generate substantial monthly payments to Judge Grimes and his family.

*See* Appellant's Brief at 2.

Irish Holdings references Greene County's "small population" and Appellant's "widespread operations in Greene County" in claiming: "That the Honorable Judge Grimes and his family have business dealings with [Appellant] based on these realities is unremarkable." Irish Holdings' Brief at 5. Irish Holdings also claims "this point was thoroughly addressed by the Honorable Judge Grimes." *Id.* Both claims are wrong. Judge Grimes has received millions of dollars from Appellant and continues to receive money from Appellant. This is remarkable. *See Dip*, 221 A.3d at 207 (stating the appearance of impropriety is sufficient to disqualify a judge when a significant minority of the lay community could reasonably question the court's impartiality). Also, Judge Grimes did not thoroughly address his relationship with Appellant. His opinion, without the caption, is only two pages long. *See* TCO at 1-3. Judge Grimes stated only that in "a small, two judge county such as Greene, the absence of familiarity is rare," and referenced the oil and gas industry in Greene County, "which results in a multitude of cases; a party in a substantial majority of those cases being [Appellant]." *Id.* at 2. Without further explanation, Judge Grimes concluded there is "not any unrelated

ownership interests or business relationship, which could create the appearance of impropriety." *Id.*

Appellant is more forthcoming. Appellant states that "neither Judge Grimes nor [Irish Holdings] contested the[] facts" in the Recusal Motion. Appellant's Brief at 8 n.3.[12] Appellant explains:

Judge Grimes personally executed three oil and gas leases with [Appellant] covering roughly 343.88 acres of land. He has received and continues to receive royalty payments and bonuses from [Appellant] pursuant to those leases—to date, totaling more than $2.5 million.

Judge Grimes'[] immediate family members also have leases with [Appellant], and Judge Grimes was involved in negotiating many of those leases with [Appellant] on behalf of his family. Judge Grimes'[] parents, the Honorable H. Terry Grimes[13] and Carlyn S. Grimes, have eight oil and gas leases with [Appellant]. His brother and sister-in-law, Mark and Janice Grimes, have two oil and gas leases with [Appellant]. His aunt, Gladys Irene Grimes, has four oil and gas leases with [Appellant]. These 14 leases have generated more than $2.5 million in bonus and royalty payments to Judge Grimes'[] family.

\*\*\*

Given the extent of these business interests, Judge Grimes has for years regularly communicated with [Appellant] on issues associated with the oil and gas leases and his and his family's business relationship with [Appellant]. These communications related to, for example, negotiations regarding leases and rights-of-way, disputes about the method of communications between

---

[12] Appellant adds that the facts are not contested by "any other plaintiff in the myriad of recusal motions [Appellant] has filed in other matters." Appellant's Brief at 8 n.3.

[13] Judge Grimes' father is retired but was also a judge in the Greene County Court of Common Pleas.

the parties to the lease, and disputes over payments claimed to be owed to Judge Grimes and his family.

These communications have continued since Judge Grimes took the bench. For example, on January 23, 2022, Judge Grimes sent [Appellant] a demand for payment pursuant to one of his leases, stating "'[p]lease consider this the notice'" required under the lease for legal enforcement. Judge Grimes also has sent other demand letters to [Appellant] relating to terms of the leases and payments under the leases, including demand letters sent before litigation was filed against [Appellant].

Appellant's Brief at 8-9 (citations omitted).

Appellant adds:

As might be expected with any business relationship, disputes have arisen, and litigation has been filed regarding the leases. For instance, in 2017, Judge Grimes, along with his spouse and other landowners, initiated a lawsuit against [Appellant] by filing a Writ of Summons. *See Robert W. Reed, et al. v. EQT Production Company, et al.*, No. AD-488-2017 (Greene Cnty. Ct. Comm. Pl.). Then, in April 2018, Judge Grimes filed a Complaint against [Appellant] in connection with that lawsuit, asserting claims related to the termination of oil and gas leases. That case was terminated by way of a praecipe to discontinue with prejudice in May 2021. *See Reed*, *supra*, No. AD-488-2017.

*Id.* at 9-10.

Judge Grimes' business relationship with Appellant creates the appearance of impropriety in this case. "The integrity of the tribunal in meeting its obligation to perform 'its high function in the best way, ... must satisfy the appearance of justice.'" *Goodheart*, 565 A.2d at 761 (citing *Aetna*, 475 U.S. at 825). Therefore, Judge Grimes' business relationship with Appellant warrants recusal.

2. *Legal Issues Potentially Impacting Judge Grimes*

Appellant argues recusal is necessary because "in the ruling on the case, [Judge Grimes] will be called upon to decide legal issues that could impact his and his family's own interests." Appellant's Brief at 14. In particular, Appellant states that Judge Grimes "must recuse from hearing a case that calls upon him to make rulings on legal issues that might impact him and his family in future disputes with [Appellant]." *Id.* at 15. Appellant notes that in his opinion, "Judge Grimes had nothing to say" on this point. *Id.* Appellant further states:

> Nor did Judge Grimes recognize that controlling law mandates his recusal where he is called upon to interpret oil and gas leases that mirror his own personal leases with [Appellant], address a range of issues that typically arise in litigation involving lessors and lessees, and declare the rights of lessors who are similarly situated to Judge Grimes and his family.

Appellant's Reply Brief at 2.[14]

We agree that the appearance of impropriety arises where Judge Grimes "presides over a case that calls upon [him] to make rulings on issues that could impact his own rights and interests vis-à-vis one of the parties to the case." *Id.* at 12-13. The legal issues potentially impacting Judge Grimes warrant recusal.

---

[14] Appellant notes that Irish Holdings, "for its part, makes no meaningful effort to defend" Judge Grimes' conclusions, "beyond invoking the deferential standard of review, which, in any event, does not salvage the erroneous recusal ruling." Appellant's Reply Brief at 2 (citation omitted).

### 3. *Direct Impact on Judge Grimes*

Judge Grimes has conceded the direct impact of this case. In his opinion, he supports recusal because of his "direct ownership, not any unrelated ownership interests or business relationship, which could create the appearance of impropriety." TCO at 2. Significantly, he does not contest his receipt of payments from production facilitated by the wells Irish Holdings identifies in its complaint alleging trespass and conversion.[15] Judge Grimes states that his ownership interest "could be impacted, however slight." **Id.** Our Supreme Court has explained that "the key is not in determining whether there is 'the slightest pecuniary interest,' but rather an objective standard as to whether the 'interest' would lead the average judge proceeding in accordance with the *accepted traditions of the judiciary* 'not to hold the balance nice, clear and true.'" **Goodheart**, 565 A.2d at 761 (citing **Aetna**, 475 U.S. at 825) (italics in original). The direct impact on Judge Grimes warrants recusal.

### CONCLUSION

Judge Grimes erred in denying recusal in this case. Appellant calls attention to its 25 pending cases where Judge Grimes has declined to recuse. **See** Appellant's Brief at 17. Appellant states "this recusal controversy is not

---

[15] Appellant averred its records "confirm that Judge Grimes receives royalty payments pursuant to production from the three wells placed at issue in the Complaint," which "alleges that [Appellant] is liable for trespass and conversion as a result of its drilling, completing and producing from these three wells." Recusal Motion at 2.

going away." *Id.*; *see also* Appellant's Reply Brief at 3 (same). Our decision is precedential, but does not automatically disqualify Judge Grimes from other cases. Appellant claims that whether Judge Grimes should recuse in its other pending cases "is not a close call." Appellant's Brief at 13. Appellant may be right. However, a recusal decision "is to be made on a case-by-case basis in light of the specific underlying facts, the nature of the interest, and the relationship of the [judge] to that interest." *Lomas*, 130 A.3d at 124. Our analysis is limited to the record in this case, although it may be instructive in future cases. "As we often recognize, a prior published opinion issued by a panel of this Court constitutes binding precedential authority." *Commonwealth v. Harris*, 269 A.3d 534, 539 (Pa. Super. 2022) (citation omitted), *aff'd*, 315 A.3d 26 (Pa. 2024).

Finally, like Judge Grimes, we recognize that Greene County is a small, two-judge county. "Occasionally, but rarely, it is necessary for all jurists in a particular county to recuse themselves from a case." *Hvizdak*, 190 A.3d at 1223 (citing *Commonwealth ex rel. Armor v. Armor*, 398 A.2d 173, 174 (Pa. Super. 1978) (*en banc*)). In *Armor*, this Court held that recusal of the entire Montgomery County bench was required because the wife of one of the judges had a financial interest in a case pending in Montgomery County. We emphasized "the appearance of integrity and independence of the judiciary which we are charged with preserving," and remanded "either for the assignment of an out-of-county judge or the grant of a change of venue." *Id.* at 174-75. *See also Commonwealth v. Lambert*, 765 A.2d 306, 362 (Pa.

Super. 2000) (stating that case should be assigned to a different judge when "it is adequately demonstrated that the interests of justice warrant recusal"). Instantly, if both Greene County judges recuse, President Judge Dayich shall "request that the Administrative Office of Pennsylvania Courts (AOPC) appoint a judge from another county." Pa.R.J.A. 701(C)(1),(6),(E)(2); *see, e.g., Weaver v. Martin*, 655 A.2d 180 (Pa. Super. 1995) (judge from 41st Judicial District was assigned to preside over case in 39th Judicial District after all judges in 39th Judicial District recused).

In sum, Judge Grimes' personal and pecuniary interest in this case presents the appearance of impropriety. Accordingly, we reverse the order denying recusal. The case shall be remanded for the entry of an order granting recusal and reassignment to another judge.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/16/2025

- 27 -